CORRECTED

## CASE NOS. 2014-1048, -1061, -1062, -1063

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

INTERNET PATENTS CORPORATION, f/k/a Insweb Corporation,

Plaintiff – Appellant,

v.

ACTIVE NETWORK, INC.,
THE GENERAL AUTOMOBILE INSURANCE SERVICES, INC.,
d/b/a The General, Permanent General Assurance Corporation, and
Permanent General Assurance Corporation of Ohio,
QUINSTREET, INC., and TREE.COM, INC.,

Defendants – Appellees.

*Appeals from the United States District Court for the Northern District of
California in Case Nos. 3:12-cv-05035-JSW, 3:12-cv-05036-JSW, 3:12-cv-06505-
JSW, and 3:12-06506-JSW, Judge Jeffrey S. White.*

## JOINT BRIEF OF DEFENDANTS – APPELLEES

## April 10, 2014

John F. Triggs
Waddey & Patterson, P.C.
1600 Division Street, Suite 500
Nashville, TN 37203
(615) 242-2400
jft@iplawgroup.com

*Counsel for Defendant Appellees*
*The General Automobile*
*Insurance Services, Inc., Permanent*
*General Assurance Corporation, and*
*Permanent General Assurance*
*Corporation of Ohio*

Thomas F. Fitzpatrick
Andy H. Chan
Pepper Hamilton LLP
555 Twin Dolphin Drive
Redwood City, CA 94065-2133
(650) 620-9550
fitzpatrickt@pepperlaw.com
chana@pepperlaw.com

*Counsel for Defendant Appellee*
*QuinStreet, Inc.*

Edward Anderson
Deepali Brahmbhatt
Sheppard Mullin Richter
& Hampton LLP
379 Lytton Avenue
Palo Alto, CA 94301
evanderson@sheppardmullin.com
dbrahmbhatt@sheppardmullin.com

*Counsel for Defendant Appellee*
*Tree.com Inc.*

Stephen S. Korniczky
Sheppard Mullin Richter
& Hamptozn LLP
12275 El Camino Real
Suite 200
San Diego, CA 92130
skorniczky@sheppardmullin.com

*Counsel for Defendant Appellee*
*Tree.com Inc.*

# CERTIFICATE OF INTEREST

Counsel for the Defendants Appellees, The General Automobile Insurance Services, Inc., Permanent General Assurance Corporation, and Permanent General Assurance Corporation of Ohio, QuinStreet, Inc. and Tree.com, Inc. certify the following:

1.  The full name of every party represented by us is:

    > The General Automobile Insurance Services, Inc.,
    > Permanent General Assurance Corporation,
    > Permanent General Assurance Corporation of Ohio
    > QuinStreet, Inc.
    > Tree.com, Inc.

2.  The name of the real party in interest represented by us is:

    > The General Automobile Insurance Services, Inc.,
    > Permanent General Assurance Corporation,
    > Permanent General Assurance Corporation of Ohio
    > QuinStreet, Inc.
    > Tree.com, Inc.

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by us are:

    > The General Automobile Insurance Services, Inc., Permanent General Assurance Corporation, and Permanent General Assurance Corporation of Ohio disclose that the following are parent corporations and/or publicly held corporations that own 10% or more of their stock: American Family Mutual Insurance Company; AMFAM, Inc.; PGC Holdings Corp.; Permanent General Companies, Inc.

    > QuinStreet, Inc. has no parent corporation and no publicly-held corporation owns 10% or more of its stock.

iii

Tree.com, Inc. discloses that the following are parent corporations and/or publicly held corporations that own 10% or more of its stock: Liberty Interactive Corporation, a publicly-held corporation owns ten percent or more of its stock.

4. The names of all law firms and the partners or associates that appeared for the party now represented by us in the trial court or are expected to appear in this court are:

Counsel for The General Automobile Insurance Services, Inc., Permanent General Assurance Corporation, and Permanent General Assurance Corporation of Ohio: John F. Triggs, Ryan D. Levy Waddey & Patterson, P.C.

Counsel for Defendant Appellee QuinStreet, Inc.: Thomas F. Fitzpatrick Andy H. Chan, Pepper Hamilton LLP

Counsel for Tree.com Inc.: Edward Anderson, Deepali Brahmbhatt, Stephen S. Korniczky, Sheppard Mullin Richter & Hampton LLP

Respectfully submitted on April 10, 2014,

/s/ John F. Triggs
John F. Triggs
Waddey & Patterson, P.C.

*Counsel for Defendant-Appellee*
*The General Automobile*
*Insurance Services, Inc., Permanent*
*General Assurance Corporation, and*
*Permanent General Assurance*
*Corporation of Ohio*

Dated: April 10, 2014

/s/ Thomas F. Fitzpatrick
Thomas F. Fitzpatrick
Andy H. Chan
Pepper Hamilton LLP

iv

*Counsel for Defendant-Appellee*
*QuinStreet, Inc.*

Dated:  April 10, 2014

/s/ Edward Anderson
Edward Anderson
Deepali Brahmbhatt
Sheppard Mullin Richter
& Hampton LLP

Stephen S. Korniczky
Sheppard Mullin Richter
& Hampton LLP

*Counsel for Defendant Appellee*
*Tree.com Inc.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. viii

STATEMENT OF RELATED CASES ..................................................xi

STATEMENT OF JURISDICTION.........................................................xi

LIST OF ABBREVIATIONS ............................................................. xii

COUNTER-STATEMENT OF THE ISSUES ON APPEAL ..................................1

COUNTER-STATEMENT OF THE CASE .............................................2

    1. The General's Motion to Dismiss IPC's Case for
       Failure to State a Claim ............................................................3

    2. The District Court Invalidates the '505 Patent ...............................4

    3. The District Court Dismisses IPC's case against
       Active, Tree and QuinStreet (the other related cases)......................5

COUNTER-STATEMENT OF FACTS .................................................6

    A. The '505 Patent...................................................................6

       1. References to Prior Art in the '505 Patent Specification ...............7

       2. The Alleged Invention as Claimed and Summarized
          in the '505 Patent Specification .............................................8

       3. IPC's Alleged Improvements are not Claimed and are
          Irrelevant to the § 101 Analysis .........................................10

       4. Claims are not Directed Towards any Specific
          Computer or Hardware.....................................................10

SUMMARY OF THE ARGUMENT ................................................11

ARGUMENT ....................................................................13

I.      STANDARD OF REVIEW.......................................................13

II.     THE DISTRICT COURT PROPERLY APPLIED
        THE LEGAL REQUIREMENTS FOR PATENT ELIGIBILITY ..............14

       A.    IPC Has Failed to Identify any Material Factual
           Disputes, Making the District Court's Dismissal
           at the Rule 12(b)(6) Stage Proper.....................................14

       B.    The District Court Properly Identified the Abstract
           Idea in the Claims of the '505 Patent ...............................16

       C.    The Claims of the '505 Patent Further Fail to Recite
           an Application of the Abstract Idea and are Instead
           Directed to the Abstract Idea Itself ...................................18

1.    The Claims Recite No Meaningful Limitations Tying the
      Desired Result to a Specific Example or Practical Application ....20
         a.  The First and Second Steps of Claim 1 Recite
             Routine and Conventional Aspects of the Abstract Idea.....21
         b.  The Third Step in Claim 1 is Inherent to
             Implement the Abstract Idea as a Desired Result................23
2.    Each Claim is Correctly Analyzed as a Whole
      for § 101 Analysis ..........................................................................24
3.    Under Analogous Supreme Court Precedent, the '505 Patent
      Does Not Claim Patent-Eligible Subject Matter ...........................26
D.  The Recited Computer Implementation Does
    Not Impart Patent Eligibility to the Method Claims ..........................28
E.  The Independent Claims Each Recite Identical Steps
    and Therefore Rise and Fall Together.................................................29
F.  The Dependent Claims Do Not Impart Patent-Eligible
    Subject Matter and Therefore Rise and Fall with
    the Independent Claims .....................................................................30
G.  The District Court Properly Applied the
    Machine-or-Transformation Test as an Investigative
    Tool to Each of the '505 Patent Claims and Found that
    the '505 Patent Fails the Test ............................................................32
    1.    The '505 Patent Claims Do Not Require
          a "Particular Machine".................................................................34
    2.    The '505 Patent Claims Do Not Perform a "Transformation" ......36
III.  THE '505 PATENT CLAIMS IMPERMISSIBLY
      PREEMPT INNOVATION WITH RESPECT TO THE
      ABSTRACT IDEA ...................................................................................37
      A.  Section 101 Analysis Looks to the Claims
          Language and any Disclosures in the
          Specification are Irrelevant .............................................................38
      B.  The General's Design Around Based on Disabling
          Browser Back and Forward Navigation Entirely
          Further Confirms Preemption............................................................40
IV.   The District Court Properly Dismissed Each of the Defendants....................41
CONCLUSION ......................................................................................................42

<u>**TABLE OF AUTHORITIES**</u>

<u>**CASES**</u>

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013) ....................................................14, 19, 37, 38

*Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012) ..........................................................*passim*

*Bilski v. Kappos*,
    130 S. Ct. 3218, 177 L. Ed. 2d 792 (2010).......................................... *passim*

*Burr v. Duryee*,
    68 U.S. 531 (1863) .......................................................................................17

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013)
    (en banc), *cert. granted*, 134 S. Ct. 734, 187 L. Ed. 2d 590 (2013)........19, 37

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
    685 F.3d 1341 (Fed. Cir. 2012), *reh'g en banc*
    *granted, opinion vacated*, 484 F. App'x 559 (Fed. Cir. 2012).....................36

*Constant v. Advanced Micro-Devices, Inc.*,
    848 F.2d 1560 (Fed. Cir. 1988) ....................................................................39

*CyberSource Corp. v. Retail Innovations, Inc.*,
    654 F.3d 1366, 1375 (Fed. Cir. 2011) ..................................................... 36-37

*Diamond v. Diehr*,
    450 U.S. 175 (1981)........................................................................16, 19, 20

*Fort Props., Inc. v. Am. Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012) ...................................................................16

*Fuller v. Yentzer*,
    94 U.S. 288 (1876)..................................................................................16, 17

*Gottschalk v. Benson*,
409 U.S. 63 (1972)...............................................................16, 26

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*,
336 U.S. 271 (1949).................................................................40

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*,
687 F.3d 1300 (Fed. Cir. 2012) .......................................... 37-38

*Hoffer v. Microsoft Corp.*,
405 F.3d 1326 (Fed. Cir. 2005) ..............................................18

*In re Bilski*,
545 F.3d 943 (Fed. Cir. 2008) .........................................5, 34, 35, 36

*Le Roy v. Tatham*,
55 U.S. 156 (1852).............................................................14, 17

*Lexion Medical, LLC v. Northgate Technologies, Inc.*,
641 F.3d 1352 (Fed. Cir. 2011) ...............................................15

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
132 S. Ct. 1289, 182 L. Ed. 2d 321 (2012)...........................*passim*

*MySpace, Inc. v. GraphOn Corporation*,
672 F.3d 1250 (Fed. Cir. 2012) ...............................................15

*O'Reilly v. Morse*,
56 U.S. 62 (1853)..............................................................*passim*

*Parker v. Flook*,
437 U.S. 584 (1978)...........................................................*passim*

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ...............................................30

*SmartGene, Inc. v. Advanced Biological Laboratories, SA*,
2014 WL 259824 (Fed. Cir. 2014) ...........................................30

*Research Corp. Techs., Inc. v. Microsoft Corp.*,
627 F.3d 859 (Fed. Cir. 2010) ....................................................................33

*Ultramercial, Inc. v. Hulu, LLC*,
722 F.3d 1335 (Fed. Cir. 2013) ..........................................................*passim*


## **STATUTES**

35 U.S.C. § 101 ...............................................................................*passim*

35 U.S.C. § 102 .....................................................................................24, 25

35 U.S.C. § 103 .....................................................................................24, 25

35 U.S.C. § 112 .....................................................................................24, 25


## **FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6).......................................................................3, 13, 14


## **SECONDARY SOURCES**

Mark A. Lemley et. al.,
*Life After Bilski*, 63 Stan. L. Rev. 1315, 1345 (2011) ....................................36

## STATEMENT OF RELATED CASES

This Court's Order of December 27, 2013 (Rader, C.J.), consolidated the four appeals listed in the caption: *Internet Patents Corporation v. The General Automobile Insurance Services, Inc., d/b/a The General, Permanent General Assurance Corporation, Permanent General Assurance Corporation Of Ohio*, Case No. 14-1048; *Internet Patents Corporation v. Active Network, Inc.,* Case No. 14-1061; *Internet Patents Corporation v. QuinStreet, Inc.,* Case No. 14-1062; and *Internet Patents Corporation v. Tree.com, Inc.,* Case No. 14-1063. Counsel for Appellees are not aware of any other case that will directly affect or be directly affected by this Court's decision in this appeal.

## STATEMENT OF JURISDICTION

Pursuant to Fed. Cir. Rule 28(b), Defendants-Appellees joined in this brief state that they do not disagree with IPC's statement of the district court's or this Court's Jurisdiction. Defendants-Appellees take no position with regard to IPC's statement that its appeal to this Court was timely.

# LIST OF ABBREVIATIONS

| | |
|---|---|
| IPC | Internet Patents Corporation |
| '505 patent | U.S. Patent No. 7,707,505 |
| U.S. Patent and Trademark Office | USPTO |

# COUNTER-STATEMENT OF THE ISSUES ON APPEAL

1. Whether the District Court properly applied controlling Supreme Court and Federal Circuit precedent in determining that each of the claims of U.S. Patent No. 7,707,505 are invalid under 35 U.S.C. § 101 as a matter of law for failure to claim patent-eligible subject matter, and are directed entirely to an abstract idea, and further fail to satisfy the machine-or-transformation test.

2. Whether Internet Patents Corporation fails to demonstrate a genuine factual dispute or otherwise any plausible reading of the claims at issue that would mandate reversal of the District Court's ruling.

3. Whether the District Court properly dismissed each of the Defendants in this consolidated appeal.

## COUNTER-STATEMENT OF THE CASE

On September 27, 2012, Plaintiff-Appellant IPC filed its complaint in two separate lawsuits alleging that Defendants-Appellees The General Automobile Insurance Services, Inc., d/b/a The General, Permanent General Assurance Corporation, Permanent General Assurance Corporation of Ohio (collectively hereinafter "The General") and Active Network, Inc. ("Active") infringe U.S. Patent No. 7,707,505 ("the '505 patent"). (A1004-05 ¶¶ 11, 13-14; A2003-04 ¶¶9, 11-12.) On December 21, 2012, Plaintiff-Appellant IPC filed two additional complaints alleging that Defendants-Appellees Tree.com, Inc. ("Tree") and QuinStreet, Inc. ("QuinStreet") infringe the '505 patent. (A4003-04 ¶¶ 8-9, 11-13; A3003-04 ¶¶ 8-9, 11-13.)

The '505 patent broadly covers dynamically generated webpages having a state that is not lost when the user navigates using back and forward buttons of a web-browser. The complaints against each Defendant-Appellee alleged infringement "by, among other things, including as part of its websites, online application technology covered by one or more claims of the '505 patent." (*See, e.g.*, A1005-06 ¶¶ 13, 17, 21.) No further allegation was provided as to how, or which parts of, the websites are alleged to infringe the '505 patent.

1.     **The General's Motion to Dismiss IPC's Case for Failure to State a Claim**

On February 20, 2013, in lieu of an answer, The General filed a motion to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) because the '505 patent is invalid under 35 U.S.C. § 101. (A1042-66.) Applying the Supreme Court precedent in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 182 L. Ed. 2d 321 (2012), The General's brief analyzed each of the claims and the relevant case law, and detailed how the '505 patent, on its face, is directed to no more than an abstract idea.

IPC filed its brief in opposition to the motion to dismiss on March 13, 2013, arguing that it "would be premature to decide issues related to eligibility under § 101 at this time." (A1090.) IPC asserted in conclusory fashion that "there are several claim terms that need to be construed before the claimed subject matter can be fully understood," but failed to identify any genuine factual dispute with respect to any such claim terms. (A1092.) In fact, throughout the entirety of its briefing to the District Court, IPC provided no discussion of the claim language except for a few scattered and verbatim quotes from the independent claims themselves, and none whatsoever with respect to the dependent claims. *See, e.g.,* (A1100-01.) Rather, IPC described its invention generally by reference to passages from the specification, (A1098), and in arguing for eligibility of their claims relied almost entirely on an amorphous computer implementation, as "the computer system

required by the claims is central to the claimed method and plays a significant part in permitting the claimed method to be performed." (A1100-01.)

### 2. The District Court Invalidates the '505 Patent

On September 24, 2013, "[h]aving considered the parties' papers, relevant legal authority, and the record in this case," the District Court held the '505 patent invalid for lack of patent-eligible subject matter, and dismissed the complaint. (A1, A6-7.)

In response to the contention by IPC that the motion to dismiss was premature because the Court had not yet construed the claims, the District Court responded that IPC had failed to "explain how a claims construction would fundamentally alter the analysis of subject matter patentability," and that "[w]here, as here, the basic character of the claimed subject matter is readily ascertainable from the face of the patent, the Court finds that it may determine patentability at the motion to dismiss stage." (A4.)

In applying Section 101 of the Patent Act to the '505 patent, the District Court correctly ruled that the '505 patent is directed to an abstract idea, and further was rendered ineligible under § 101 because it "added no elements or combination of elements, sometimes referred to as the inventive concept, sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the natural law [or the abstract idea]." (A5 (citing *Mayo*, 132 S. Ct. at 1294).) Using

the machine or transformation test as an investigative tool, the District Court also found that the '505 patent failed the machine or transformation test, as it was not sufficient to merely point out that "each claim and the desired result require computer implementation."[1]   (A6.)   Rather, although the technology was acknowledged as relating to online applications systems, IPC had "failed to show how the desired result of the patent is coupled with or integrated into a specific process." (*Id.*)

### 3.   The District Court Dismisses IPC's case against Active, Tree and QuinStreet (the other related cases)

Finally, having granted The General's motion to dismiss, the District Court further dismissed each of the related cases on the same grounds.  Dismissal of the related cases was proper because the only claims at issue were all related to the '505 patent that was ruled invalid under patent ineligible subject matter.  (A4236, 4245-46.)  The fact that Defendants-Appellees other than The General did not file a motion to dismiss under § 101 is irrelevant, and Plaintiff-Appellant IPC's assertions to the contrary should be disregarded.  (Appellant's Br. 13.)

---

[1]  The machine-or-transformation test remains "a useful and important clue, an investigative tool" for patentability under § 101. *Bilski v. Kappos*, 130 S. Ct. 3218, 3227 (2010); *In re Bilski*, 545 F.3d 943, 954-56 (Fed. Cir. 2008).

## COUNTER-STATEMENT OF FACTS

### A.    The '505 Patent

IPC alleges infringement of Claims 1-24 of the '505 patent, entitled "Dynamic Tabs for a Graphical User Interface."  Claim 1 of the '505 patent is representative and recites as follows:

> A method of providing an intelligent user interface to an on-line application comprising the steps of:
>
> furnishing a plurality of icons on a web page displayed to a user of a web browser, wherein each of said icons is a hyperlink to a dynamically generated on-line application form set, and wherein said web browser comprises Back and Forward navigation functionalities;
>
> displaying said dynamically generated on-line application form set in response to the activation of said hyperlink, wherein said dynamically generated on-line application form set comprises a state determined by at least one user input; and
>
> maintaining said state upon the activation of another of said icons, wherein said maintaining allows use of said Back and Forward navigation functionalities without loss of said state.

(A82[15:52-67].)

Briefly stated, Claim 1 requires a web page that includes a plurality of hyperlinks associated with different icons.  When a user selects one of the icons, the corresponding hyperlink causes a respective "dynamically generated on-line application form set" to be displayed.  Based on the user input, the form set is displayed with a respective state that is maintained upon activation of a subsequent

hyperlink, allowing use of conventional Back and Forward web browser functionalities without loss of that state.

Each of the '505 patent claims are exceedingly broad because they are not directed to a specific way of providing the desired result, but rather preempt any and all systems and methods that allow the use of Back and Forward navigation of a multi-page form without loss of state.

### 1. References to Prior Art in the '505 Patent Specification

As the patent states, it was conventionally known at the time the underlying application was filed to provide "automated insurance quoting systems that [were] accessible directly over the web." (A75[1:40-43].) Information was typically "collected from a user of a client computer connected to a server computer via the Internet," the information varying "accordingly to the type of insurance quote requested," "the user," "the subject of the insurance policy to be underwritten," "the type of coverage requested," etc. (A75[1:46-56].) Based on the information provided, insurance quotes could be generated in an automated fashion. (A75[1:56-60].) Users were further allowed "to save the information already entered for use at a later time." (A75[2:3-5].)

More particularly, several conventional on-line applications offered "graphical elements that look like tabs for triggering hyperlinks to other pages" in a multi-page form. (A77-78[6:65-7:3].) Another conventional characteristic was

that "[s]ome application data state is preserved from page to page," in other words preserving or "caching" "limited information either on the client or host server machines so that a form spanning several pages may be completed." (A78[7:3-4]; A79[9:53-56].)

The '505 patent further notes "[t]he process used in the prior art to fill out the application is essentially linear," making it difficult "to make changes in information already entered" and further forcing many users in certain situations to have to "re-enter all or part of the information required in the application." (A75[2:27-36].) One reason for this is that "the common convenience of the 'Back' and 'Forward' buttons (provided in all well-known Internet browsers) generally does not function properly when filling in on-line forms. Information is often lost when attempting to use the Back and Forward buttons to navigate within a multi-page virtual (on-line) form, particularly when using so-called 'secure' forms such as those commonly employed in on-line ecommerce transactions." (A75[2:37-44].)

## 2. **The Alleged Invention as Claimed and Summarized in the '505 Patent Specification**

The '505 patent explicitly states that, "[t]he most important aspect of the user interface of the present invention is not that it has tabs or that it enables a certain amount of non-sequential (non-linear) access to the various form sets

within a virtual application, but that it maintains data state across all panes." (A79[9:45-49].)

As noted, *supra*, with respect to the prior art, it was conventionally known to preserve some data state across a multi-page application form, but the specification of the '505 patent allegedly expands on the conventional aspects in that "the present system, in all its embodiments, maintains virtual application information, relative dependencies, and information context obtained and/or derived from each pane accessed by the user/applicant." (A79[9:60-63].) However, these functions are not claimed.

In other words, the "invention" as recited in the specification of the '505 patent does not merely maintain the state of data in an application form in the conventional sense, but further allegedly "enables use of standard browser Back and Forward button functions without loss of data and without losing the user's 'place' in the application process. A user can therefore 'back up' one or more sub-panes or panes (i.e., switch to a logically 'earlier' tab) and correct or change a data entry without having to re-enter any data from that earlier point forward to the point at which the user jumped back." (A79[9:64-10:3].)

Such a feature was considered by the patentee to be "impossible under the prior art" because previously entered data "may be lost due to insufficient page cache resources on the server or client computers or due to security restrictions set

by either the user or a system administrator.  As an example of the latter situation, the well-known Internet Explorer browser version 5.0 for the Macintosh automatically erases (i.e., deliberately does not cache) secure web pages so that the Back button always returns a blank (unfilled) form, rather than the previously filled-in one."  (A79[10:16, 19-27].)

### 3. IPC's Alleged Improvements are not Claimed and are Irrelevant to the § 101 Analysis

IPC incorrectly insists that claimed "improvements" in the '505 patent for maintaining the state of an online application form set include maintaining information that has been entered into more than one or multiple web pages. (Appellant's Br. 3-4).  However, even a cursory review of the claim language itself demonstrates that the "state" which is "maintained" in the last step of the claim clearly refers to the state of the dynamic web page when it is generated and displayed after a single user input.  Any subsequent user inputs are irrelevant and whether or not the specification describes alleged further "improvements" is irrelevant to the present inquiry.

### 4. Claims are not Directed Towards any Specific Computer or Hardware

It should be noted that all of the claims in the '505 patent are directed entirely to data manipulation, with no specific computer or otherwise hardware components to restrict the scope of the claims.  The overwhelming breadth of the

claimed structure is demonstrated not only in the lack of explicit limitations in the claims, but by reference to the specification:

> The method of the present invention may be performed in hardware, software, or *any combination thereof*, as those terms are currently known in the art. In particular, the present method may be carried out by software, firmware, or microcode operating on a *computer or computers of any type*. Additionally, software embodying the present invention may comprise *computer instructions in any form* (e.g., source code, object code, interpreted code, etc.) stored in *any computer-readable medium* (e.g., ROM, RAM, magnetic media, punched tape or card, compact disc (CD) in any form, DVD, etc.). Furthermore, *such software may also be in the form of a computer data signal embodied in a carrier wave, such as that found within the well-known Web pages transferred among computers connected to the Internet*. Accordingly, the present invention is *not limited to any particular platform*, unless specifically stated otherwise in the present disclosure.

> (A82[15:27-42] (emphases added).)

Thus, the '505 patent seeks a claim scope that is untethered to any practical applications that may be disclosed in the body of the patent, and more importantly, cannot be allowed to preempt innovation in any and all after-arising technology that may provide the intended result.

## SUMMARY OF THE ARGUMENT

IPC's patent is invalid because it is directed entirely to a disembodied abstract idea in the form of a desired result of allowing web browser back and forward navigation without loss of state in online forms. The steps in the claims apart from the abstract idea involve well-understood, routine and conventional

aspects of the abstract idea, and therefore fail to limit the abstract idea to a practical application. *See, e.g., Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338-39 (Fed. Cir. 2013) (citing *Mayo*, 132 S. Ct. at 1298). In short, the '505 patent attempts to encompass effectively all solutions to a known problem in web browser navigation with respect to multi-page forms, and any further associated innovations, without providing any suitable contribution of its own to the state of the technology. This overly broad scope, and resulting disproportionate amount of preemption, is in direct opposition with core principles of patent law. As consistently interpreted by the Supreme Court, unanimously so in *Mayo*, such claims cannot be allowed to stand under Section 101 of the Patent Act.

The claims themselves recite no new steps, no new software programming, no new hardware, no new uses or implementations of otherwise conventional software or hardware, by which the broadly recited motive or result (as embodied in the "wherein…" clause of each claim) may be obtained. Assuming, *arguendo*, that any such programming is disclosed in the specification, such limitations are not permissibly incorporated into the claims. IPC's repeated assertions that there is integration of the result into an "improved machine" (Appellant's Br. 3, 31, 37) are baseless and should be summarily rejected.

The District Court properly considered the entirety of the record, as well as controlling precedent in the relevant areas of law, and ruled that all of the claims in

the '505 patent were directed to patent-ineligible subject matter. Dismissal under Rule 12(b)(6) is appropriate here because there are no material factual disputes, and any claim construction would not change the § 101 determination.

IPC challenges the ruling of the District Court that the claims are directed to an abstract idea, but fails to demonstrate a single plausible reading of the claims that would dictate otherwise. IPC further challenges the District Court's ruling of law based on an alleged failure to properly analyze the language of the claims, but again fails to indicate how the record, having been properly considered by the District Court, does not support its judgment. It is manifestly evident from the face of the claims that they are impermissible under Section 101—IPC did not then, and does not now proffer any genuine issues of material fact to alter that legal conclusion.

Having properly dismissed the lawsuit against The General, the District Court properly dismissed each of the related cases.

## ARGUMENT

### I.   STANDARD OF REVIEW

Pursuant to Fed. Cir. Rules 28(a)(10) and 28(b), Appellees agree with IPC that the standard of review for all issues in this appeal is *de novo*.

13

## II.   THE DISTRICT COURT PROPERLY APPLIED THE LEGAL REQUIREMENTS FOR PATENT ELIGIBILITY

This appeal turns on whether the '505 patent claims patent-eligible subject matter under 35 U.S.C. § 101.

### A.   IPC Has Failed to Identify any Material Factual Disputes, Making the District Court's Dismissal at the Rule 12(b)(6) Stage Proper

"[T]he important inquiry for a § 101 analysis is to look to the claim." *Accenture Global Services, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013); *see also Le Roy v. Tatham*, 55 U.S. 156, 176 (1852) ("[W]e must look to the claim of the invention stated in their application by the patentees.").

In the absence of any factual dispute, claim construction is not required to analyze the '505 Patent for subject-matter ineligibility. This Court has noted that claim construction is not an inviolable prerequisite to a validity determination under § 101. *Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1274 (Fed. Cir. 2012). While a determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, *Id.*, 687 F.3d at 1273-74; *Ultramercial*, 722 F.3d at 1340, IPC has failed to proffer any claim term for construction that would result in a material factual dispute with regards to § 101 analysis. The District Court properly considered the record before it and the case law on point, and found that where, "as here, the basic character of

14

the claimed subject matter is readily ascertainable from the face of the patent." Further in view of the failure by IPC "to explain how a claims construction would fundamentally alter the analysis," the District Court ruled that a determination of patent-eligibility was appropriate. (A4.)

IPC directs much of its argument on appeal to the District Court's alleged failure in not "referencing, analyzing or explaining why" the claim language is directed to patent-ineligible subject matter. (Appellant's Br. 20.) However, this Court has reiterated that while detailed analysis by the district courts is preferable, "'[w]here the record adequately supports the judgment, the district court does not have an obligation to recite every detail of its reasoning.'" *MySpace, Inc. v. GraphOn Corporation*, 672 F.3d 1250, 1263 (Fed. Cir. 2012) (quoting *Lexion Medical, LLC v. Northgate Technologies, Inc.*, 641 F.3d 1352, 1359 (Fed. Cir. 2011)). The District Court "considered the parties' papers, relevant legal authority, and the record in this case" in making its judgment. (A1.) The papers in question included a detailed briefing from The General as to why each of the claims were directed to patent-ineligible subject matter, while IPC was content to merely deride the notion of dismissal on the pleadings as being premature, making virtually no reference, analysis or explanation of their own with respect to the claim language in general, and none whatsoever to any of the dependent claims.

15

**B.**    **The District Court Properly Identified the Abstract Idea in the Claims of the '505 Patent**

The District Court correctly applied the controlling Supreme Court and Federal Circuit precedents for § 101 analysis of the '505 Patent.  Section 101 "specifies four independent categories of inventions or discoveries that are eligible for protection: processes, machines, manufactures, and compositions of matter." *Bilski*, 130 S. Ct. at 3225.  The Supreme Court has long recognized implicit exceptions to the statutory categories of patentable subject matter under § 101 of the Patent Act, namely: "laws of nature, natural phenomena, and abstract ideas." *Mayo*, 132 S. Ct. at 1293.  These exceptions "are not patentable, as they are the basic tools of scientific and technological work," which are "free to all men and reserved exclusively to none."  *Id.*  (internal quotations omitted).  Subject matter falling within these exceptions is not patent-eligible as a matter of law.  *Id.*

This case turns on whether the '505 patent claims an abstract idea—a motive, quality, or outcome of the idea disassociated from material objects or specific, practical examples.  *Ultramercial*, 722 F.3d, at 1342-43 (citing *Mayo*, 132 S. Ct. at 1297; *Bilski*, 130 S. Ct. at 3230; *Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012); *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972); *Diamond v. Diehr*, 450 U.S. 175, 187 (1981).  Invention, if any, lies "in the means or apparatus by which the result is obtained," not "an idea, or any other mere abstraction."  *Fuller v. Yentzer*, 94 U.S. 288, 288 (1876); *O'Reilly v. Morse*,

56 U.S. 62, 113 (1853). That is because "a claim is not meaningfully limited if its purported limitations provide no real direction, cover all possible ways to achieve the provided result, or are overly-generalized." *Ultramercial*, 722 F.3d at 1346.

Straightforward and well-settled examples of impermissible abstract ideas include where a claim is directed to a desired result, original cause or motive. *See Morse*, 56 U.S. at 113 (voiding a patent claim directed to a mere result because "[i]f this claim can be maintained, it matters not by what process or machinery the result is accomplished"); *Fuller*, 94 U.S. at 288 ("Patents for a machine will not be sustained if the claim is for a result…."); *Burr v. Duryee*, 68 U.S. 531, 570-71 (1863) (rejecting inference that "an inventor who has made an improvement in a machine, and thus effects the desired result in a better or cheaper manner than before, can include all previous inventions, and have a claim to the whole art, discovery, or machine which he has improved"); *see also Le Roy*, 55 U.S. at 175. Like *Morse*, the '505 patent claims an intended result without specific limitations as to how or by what process the result is accomplished.

Following the two step method set forth by this Court in *Ultramercial* and *Accenture*, a court should first identify the abstract idea covered by the claims and then determine whether the claim language is meaningfully limited so as to only claim an application of the idea as opposed to the entire abstract idea. Here, the District Court correctly identified the abstract idea IPC seeks to claim as "the use

of a conventional web browser Back and Forward navigational functionalities without data loss in an online application consisting of dynamically generated web pages." (A5.) As recognized by the District Court, each of the claims of the '505 patent clearly present just such an example in the commonly recited "wherein" clause. The "wherein" clause states that the claims aspire to "allow the use of a conventional web browser Back and Forward navigational functionalities without data loss in an online application consisting of dynamically generated web pages." (A5.) It is well-settled that a "wherein" or "whereby" clause "generally states the result of the patented process." *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1329 (Fed. Cir. 2005). It is also manifestly evident that this clause alone, without more, is "abstract" in nature and fails to recite patent-eligible subject matter. Thus, the first step in the § 101 inquiry may therefore be satisfied in identifying this desired result as an abstract idea.

C. **The Claims of the '505 Patent Further Fail to Recite an Application of the Abstract Idea and are Instead Directed to the Abstract Idea Itself**

In defining unpatentable "abstract ideas" the Supreme Court has generally sought to prevent inventors from claiming their ideas too broadly, emphasizing a long-felt concern that the grant of patents should not "inhibit future innovation premised upon" abstract ideas, "or otherwise foreclose[] more future invention than the underlying discovery could reasonably justify." *Mayo*, 132 S. Ct. at 1301.

18

However, the Supreme Court further cautions that the mere presence of an exception is insufficient to render a claim patent-ineligible, but rather the appropriate test is whether "the application, considered as a whole, contains no patentable invention." *Parker v. Flook*, 437 U.S. 584, 594 (1978). In other words, "a claim is not patent eligible only if, instead of claiming an *application* of an abstract idea, the claim is instead *to* the abstract idea itself." *Ultramercial*, 722 F.3d at 1343 (emphases in original). However, a patent-eligible application of an exception (*e.g.*, an abstract idea) to statutory subject matter must "contain other elements or a combination of elements, sometimes referred to as an 'inventive concept,'" so as to "do significantly more than simply describe" the exception. *Mayo*, 132 S. Ct. at 1294, 1297.

Therefore, it is not enough to simply identify an abstract idea throughout the claims in the '505 patent, but the inquiry continues by seeking to determine whether the claim poses "any risk of preempting an abstract idea." *Accenture*, 728 F.3d at 1341; *citing CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1282 (Fed. Cir. 2013) (en banc). This involves analyzing the claim as a whole to determine if the additional steps recite any more than "well-understood, routine, conventional activity" so as to describe a "patent-eligible application." *Mayo*, 132 S. Ct. at 1298. In other words, a preemption analysis requires a determination as to whether "additional substantive limitations … narrow, confine, or otherwise tie down the

claim so that, in practical terms, it does not cover the abstract idea itself." *CLS Bank*, 717 F.3d at 1282 (citing *Mayo*, 132 S. Ct. at 1300; *Bilski*, 130 S. Ct. at 3231; *Diehr*, 450 U.S. at 187). Without meaningful limitations to a claimed result, a patent effectively preempts the result itself and claims exclusive ownership over a range of inventions (including all future applications) well beyond anything that the patentee may have contributed to the state of the art. *See Morse*, 56 U.S. at 112-14; *Bilski*, 130 S. Ct. at 3230-31 ("[T]he prohibition against patenting abstract ideas 'cannot be circumvented by' … adding 'insignificant postsolution activity.'") (quoting *Diehr*, 450 U.S. at 191-92).

### 1. The Claims Recite No Meaningful Limitations Tying the Desired Result to a Specific Example or Practical Application

Applying claim-by-claim analysis, each claim of the '505 patent along with the abstract idea recites well-understood, routine and conventional activity previously engaged in the field that do not further limit the abstract concept to a practical application. *Mayo*, 132 S. Ct. at 1294. Claim 1 recites an overly generalized series of steps which include no limitations in addition to the abstract idea, other than pre- or post-solution activity or mere restatements of routine and conventional aspects of the desired result—allowing Back and Forward browser functionality without loss of state in an online form set.

### a.  The First and Second Steps of Claim 1 Recite Routine and Conventional Aspects of the Abstract Idea

The first step in the claimed method is for "furnishing a plurality of icons on a web page displayed to a user of a web browser, wherein each of said icons is a hyperlink to a dynamically generated online application form set, and wherein said web browser comprises Back and Forward navigation functionalities." (A82[15:54-58].)[2]  As recited in the '505 patent, this was a conventional feature in on-line applications to offer "graphical elements that look like tabs for triggering hyperlinks to other pages" in a multi-page form.  (A77[6:66-67].)  Web pages generated as part of a conventional online application (e.g., information collection or insurance quote pages) included content that was determined based on information previously provided by the user, rather than being fully static in nature.  (A75[1:40-60].)  Further, the "Back" and "Forward" navigation tools are acknowledged as being "provided in all well-known Internet browsers." (A75[2:37-39].)

There is no plausible argument that the intended result would be implemented without such a step.  First, a plurality of web pages in an online form set is a necessary element, as otherwise there would be no concern that state was lost from one page to another.  Second, that such web pages are dynamically

_____

[2] The first step required in each of claims 9 and 17 is identical to the first step in claim 1.

21

generated is also a necessary element, as no state would ever be lost in a static web page without data entry.  Finally, that the first step requires furnishing more than one hyperlink to the respective web pages is, if not inherently required, no more than a routine and conventional aspect of the abstract idea.

The second step in the claimed method is for "displaying said dynamically generated on-line application form set in response to the activation of said hyperlink, wherein said dynamically generated on-line application form set comprises a state determined by at least one user input."  (A82[15:59-63].)[3]  This step is also conventional, not merely with respect to its intuitive nature, but also as explicitly disclosed in the specification of the '505 patent.  For example, the '505 patent discloses it was conventionally known to provide automated insurance quoting systems wherein information that was collected may vary "accordingly to the type of insurance quote requested," "the user," "the subject of the insurance policy to be underwritten," "the type of coverage requested," etc.  (A75[1:47-56].)  Based on the information provided, insurance quotes could subsequently be generated in an automated fashion.  (A75[1:56-60].)  Therefore, a data state of a web page for collecting information would be determined by at least one user input relating to, e.g., the type of insurance quote or coverage requested, and a data state

---

[3] The second step required in each of claims 9 and 17 is identical to the second step in claim 1.

of a web page for providing a quote would be determined by at least one user input relating to criteria or parameters for generating the requested quote.

Again, there is no plausible argument that the intended result would be implemented without such a step. In order for Back and Forward navigation functionalities to be allowed without loss of state, each portion of the online form set must inherently have a state to be maintained. Further, the generation of subsequent web pages in an online form set must inherently be in response to some user action. That the second step requires activation of a hyperlink to the respective web pages is, if not inherently required, once again no more than a routine and conventional aspect of the abstract idea.

### b. The Third Step in Claim 1 is Inherent to Implement the Abstract Idea as a Desired Result

The third step in the claimed method is for "maintaining said state upon the activation of another of said icons." (A82[15:64-65].)[4] As noted in the '505 patent, "some application data state is preserved from page to page," in other words preserving or "caching" "limited information either on the client or host server machines so that a form spanning several pages may be completed." (A79[9:53-56].)

---

[4] The third step required in each of claims 9 and 17 is identical to the third step in claim 1.

The state of a respective online form set must inherently be maintained in some fashion in order to allow use of the conventional Back and Forward navigation functionalities without loss of the state. The third step itself provides no explicit structure, guidance or meaningful limitation whatsoever as to how the state would be maintained, but rather encompasses any means by which the state is maintained when the user navigates to another online form set.

## 2. **Each Claim is Correctly Analyzed as a Whole for § 101 Analysis**

The applicable law and controlling precedents for a § 101 analysis do not allow "ignoring" the remaining steps or elements in a claim, but rather the proper analysis is to "determine if the additional steps recite any more than "well-understood, routine, conventional activity" so as to describe a "patent-eligible application." *Mayo*, 132 S. Ct. at 1298. Where, as here, the only plausible reading of the claims is that the remaining elements in combination broadly encompass conventional and necessary activity for implementing the desired result, the abstract idea is not integrated into a patent-eligible claim.

IPC incorrectly protests that this is claim-dissecting and improperly conflates with §§ 112, 102 and 103 analysis. (Appellant's Br. 36-38.) The Supreme Court has expressly acknowledged that, in evaluating the significance of additional steps, there may be some overlap between the patent-eligibility inquiry and the various patentability inquiries. *Mayo*, 132 S. Ct. at 1304. At least in part,

24

this may be because a law of nature, or equivalent exception such as an abstract idea, while otherwise satisfying statutory conditions for patentability "will nonetheless create the kind of risk that underlies the law of nature exception, namely the risk that a patent on the law would significantly impede future innovation." *Id.* Therefore, the "routine" or "conventional" aspects of a claim element may be relevant to more than one inquiry.

If an intended result is supported by an adequately described embodiment in the specification, but the embodiment is not claimed, the claim fails the *Mayo* test for patent ineligibility under Section 101 without requiring any consideration of § 112. The same may be said for analysis under § 102 and § 103. The *Mayo* test for patent ineligibility under § 101 requires only that the remaining steps are analyzed to determine whether they integrate the abstract idea/desired result into a specific application, and any discussion with respect to the conventional nature of the claim steps should be construed in this vein. The "inventive concept" in a § 101 analysis refers to whether or not a combination of elements in a claim, in addition to the abstract idea, ensure that the patent in practice amounts to significantly more than a patent upon the abstract idea itself, not to questions of anticipation or obviousness with respect to the prior art generally. *Mayo*, 132 S. Ct. at 1294.

In the context of a claim including an abstract idea, any additional steps fail to render the claim patent-eligible if they merely "consist of well-understood, routine, conventional activity already engaged in by the scientific community; and those steps, when viewed as a whole, add nothing significant beyond the sum of their parts taken separately." *Id*. at 1298. Here, each claim of the '505 Patent as a whole fails the § 101 analysis.

### 3. <u>Under Analogous Supreme Court Precedent, the '505 Patent Does Not Claim Patent-Eligible Subject Matter</u>

The '505 patent fails to provide any limitation at all that meaningfully ties the intended result to a specific application, and therefore falls squarely within the province of controlling Supreme Court precedent rejecting patent subject matter eligibility for such claims. In *Benson*, the Supreme Court found ineligible for patenting a method of converting binary-coded decimals into pure binary numerals, because it was "so abstract and sweeping as to cover both known and unknown uses" of the result, "from the operation of a train to verification of drivers' licenses" accomplished "through any existing machinery or future-devised machinery or without any apparatus." 409 U.S. at 68. Similarly, the '505 patent seeks to cover a desired result—allowing the use of browser navigation tools without loss of state in an online application—regardless of how that result is accomplished.

In *Flook*, the Court considered whether a method of updating alarm limits while refining petrochemicals and oil was patent eligible.  Even though the method employed a new mathematical formula, it was found to be unpatentable because the additional steps in the claimed process "did not limit the claim to a particular application," but rather recited features which were all "'well-known,' to the point where, putting the formula to the side, there was no 'inventive concept' in the claimed application of the formula."  *Mayo*, 132 S. Ct. at 1299 (quoting *Flook*, 437 U.S. at 594).  In view of the guidance provided in *Mayo*, the claims of the '505 patent inherently present a case for patentability that is no stronger than the unpatentable claim in *Flook*, in that each step adds nothing to the desired result "other than what is well-understood, routine, conventional activity, previously engaged in by those in the field."  *Mayo*, 132 S. Ct. at 1299.

In many ways the present case is more analogous with *Morse* than any of the aforementioned examples.  Like *Morse*, the patent claims at issue are impermissible because they cover a desired result distinct from any process or machinery necessary to produce it.  However, unlike other claims at issue in *Morse* that adequately disclosed processes and machinery for implementing the desired effect in the specification and in various additional claims, the '505 patent provides neither.

27

To the extent this Court in *Ultramercial* distinguished the claims at issue from *Morse* in that they were "not made without regard to a particular process," citing various figures and "an extensive computer interface," "intricate and complex computer programming," or "a cyber-market environment," any analogous complexity is simply not present here. *Ultramercial*, 722 F.3d at 1350-53. The patent at issue in *Ultramercial* disclosed detailed flowcharts relating to the claimed method steps, and computer systems operating in tandem over a communications network to implement the claimed method. *Id*. But here, the entirety of the disclosure in the '505 patent relating to the step for "maintaining said state" may be covered in a single sentence; namely, "[i]n contrast to the prior art, the present system, in all its embodiments, maintains virtual application information, relative dependencies, and information context obtained and/or derived from each pane accessed by the user/applicant." (A79[9:60-63].)

Claims like these, which, as a whole, merely recite an abstract idea, would prohibit achieving the claimed outcome by any means whatsoever, effectively violating the prohibition against over-generalization this Court articulated in *Ultramercial*. 722 F.3d, at 1347. Accordingly, the District Court correctly found that IPC's method, computer-readable media, and system claims each claim a "mere abstract idea that an invention could address the challenges of retaining information lost in the navigation of online forms" on a computer. (A5.)

### D. The Recited Computer Implementation Does Not Impart Patent Eligibility to the Method Claims

It is irrelevant to § 101 analysis that the method claims of the '505 patent are directed, implicitly or otherwise, to computer implementations in the field of online application forms. The Supreme Court has long held that "limiting an abstract idea to one field of use or adding token postsolution components [does] not make the concept patentable." *Bilski*, 130 S. Ct. at 3231. Further, the *Mayo* Court specifically reaffirmed its prior holding in *Benson* that simply implementing an unpatentable process on a computer is "not a patentable application of that principle." *Mayo*, 132 S. Ct. at 1301. The *Mayo* Court, having rejected field-of-use limitations and merely conventional extra-solution activity such as computer implementation, subsequently held that the claims before it were "overly broad; [in that they] did not differ significantly from a claim that just said 'apply the algorithm.'" *Id.* Similarly, the claims of the '505 patent merely recite conventional post-solution activity (or field-of-use limitations), and effectively say "provide the result." Regardless of how limited in nature the desired result may be, or the application at issue as recited by the claim as a whole, these claims must fail if the steps add nothing of significance to the result itself. *See, e.g., Id.* at 1302.

### E.    The Independent Claims Each Recite Identical Steps and Therefore Rise and Fall Together

Claims 9 and 17 of the '505 patent are directed to a computer system and computer-readable storage medium, respectively, each of which comprises computer instructions for performing the identical method as recited in Claim 1. This Court has held that "a machine, system, medium, or the like may in some cases be equivalent to an abstract mental process for purposes of patent ineligibility," and that such an example is presented where a claim "recites 'a computer readable medi[um] for controlling a computer to perform'" the same steps as the method claim, "repeated word for word." *Bancorp Services, LLC*, 687 F.3d at 1277. The asserted system and medium claims of the '505 patent are effectively indistinguishable from the asserted method claim in their analysis because they are "equivalent for purposes of patent eligibility under § 101." *Id.*

As Claim 1 is directed to an abstract idea and therefore patent ineligible subject matter under § 101, the other independent Claims 9 and 17, which are essentially word for word repeats of Claim 1, are accordingly also invalid for the reasons stated above.

### F.    The Dependent Claims Do Not Impart Patent-Eligible Subject Matter and Therefore Rise and Fall with the Independent Claims

The General argued in its briefing to the District Court that the dependent claims add no limitations which alter the present analysis in any way. IPC did not

dispute this characterization or present other arguments regarding the dependent claims in its own brief to the District Court. Therefore, the issues raised on appeal by IPC with respect to the dependent claims appear to have been forfeited, as it "is well established that arguments not raised in the opening brief are waived." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319-20 (Fed. Cir. 2006); *see also SmartGene, Inc. v. Advanced Biological Laboratories, SA*, 2014 WL 259824, *3 (Fed. Cir. 2014) (finding waiver on appeal of arguments not developed in briefing to the district court).

In any event, the newly presented assertions of IPC are still unavailing. At most, the dependent claims add mere field-of-use limitations that do not meaningfully confine preemption of the desired result.

Several of the claims are directed merely to the arrangement or presentation of conventional computer-related elements, such as where icons are depicted on a web page (*e.g.*, claims 5 and 6[5]) and additional but irrelevant content associated with the web page itself (*e.g.*, claim 7[6]). IPC argues that the "quasi-static elements" recited in claim 7 present a specific example of a material object, but fails to explain how such elements are anything more than routine aspects of the

---

[5] Claims 13, 14, 21, and 22 further recite identical limitations with respect to those of claims 5 and 6, and are irrelevant for the same reasons.
[6] Claims 15 and 23 recite identical limitations with respect to those of claim 7.

intended result, i.e., merely a field of use or a token post-solution component with respect to online form sets. (A82[16:29-35].)

Other dependent claims are directed to mere data-gathering steps, such as defining the data sources for a form set (*e.g.*, claim 2[7]) or the types of data to be gathered (*e.g.*, claim 3[8]). IPC argues here that claim 2 also recites a specific example of a material object, in that the online form set is generated by combining information from a template and a database. However, there is again no explanation for how adding such a limitation could be considered anything but "token postsolution components," which add essentially nothing to the underlying abstract idea. *Bilski*, 130 S. Ct at 3231; *Flook*, 437 U.S. at 590.

The remaining dependent claim is no more than a standard field-of-use limitation (e.g., claim 4[9]).

Simply appending field-of-use qualifications and insignificant extra-solution activity to an abstract idea provides no meaningful limitation and therefore cannot overcome an established exception to patent subject matter eligibility. *See Mayo*, 132 S. Ct. at 1300; *Bilski*, 130 S. Ct. at 3231; *Flook*, 437 U.S. at 594-95. It follows that where the exception at issue is a claimed result supported only by conventional and non-inventive steps, dependent claims that fail to further define the process by

---

[7] Claims 10 and 18 recite identical limitations with respect to those of claim 2.

[8] Claims 11 and 19 recite identical limitations with respect to those of claim 3.

[9] Claims 12 and 20 recite identical limitations with respect to those of claim 4.

which the result is achieved, or otherwise to define an inventive concept in conjunction with the previously recited claims, fail to make the claims patentable.

### G. The District Court Properly Applied the Machine-or-Transformation Test as an Investigative Tool to Each of the '505 Patent Claims and Found that the '505 Patent Fails the Test

Although not dispositive, many courts continue to rely upon the machine-or-transformation test as a "useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101." *Bilski*, 130 S. Ct. at 3226-27. While rejecting the notion that the machine-or-transformation ("MOT") test was the "sole test for governing § 101 analysis," the *Bilski* Court nonetheless did not foreclose use of the test. *Id*. at 3224, 3236-27.

Under the machine-or-transformation test, a claimed process is patent-eligible under § 101 if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *In re Bilski*, 545 at 954; *see also Flook*, 437 U.S. at 589, n.9 ("An argument can be made, however, that [the Supreme Court] has only recognized a process as within the statutory definition when it either was tied to a particular apparatus or operated to change materials to a different state or thing.") (internal quotation omitted).

In applying the machine-or-transformation test for the claims of the '505 patent, the District Court rejected arguments that the claims were patent-eligible merely because they required computer implementation. (A6.) IPC responds by

33

arguing that the claims are patent-eligible under the machine-or-transformation test not merely because the claims use a computer, but because they allegedly improve the function of a computer, citing for support *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir. 2010). This Court in *Research Corp.* did not even apply the machine-or-transformation test. In any event, unlike *Research Corp.*, there are no improved structures and functions other than the general purpose computer hardware and software. Thus, IPC's repeated assertions that there is integration of the result into an "improved machine" (Appellant's Br. 3, 31, 37) are baseless and should be summarily rejected.

## 1. The '505 Patent Claims Do Not Require a "Particular Machine"

For a machine to make an otherwise unpatentable process patent eligible, it must impose "meaningful limits" on the scope of the claim and be integral to the process. *In re Bilski*, 545 F.3d at 961. A computer does not satisfy the "machine" prong of the MOT test where "the specified computer components are no more than objects on which the claimed methods operate, and [] the central processor is nothing more than a general purpose computer programmed in an unspecified manner." *Bancorp Services*, 687 F.3d at 1272. The plain language of Claim 1 of the '505 patent does not require the method to be performed by a "particular machine," but merely a general purpose computer programmed in some

34

unspecified fashion. In fact, there is no mention at all in the claim of the apparatus performing the method.

To the extent such structure may be considered as implicit in operation of the method, the language of the '505 patent specification further removes any doubt as to the general nature of the structure, or even that there may be no computer medium at all needed to implement the method:

> "The method of the present invention may be performed in hardware, software, or any combination thereof, as those terms are currently known in the art. In particular, the present method may be carried out by *software, firmware, or microcode operating on a computer or computers of any type*. Additionally, software embodying the present invention may comprise computer instructions in any form (e.g., source code, object code, interpreted code, etc.) stored in any computer-readable medium (e.g., ROM, RAM, magnetic media, punched tape or card, compact disc (CD) in any form, DVD, etc.). Furthermore, such software *may also be in the form of a computer data signal embodied in a carrier wave*, such as that found within the well-known Web pages transferred among computers connected to the Internet. Accordingly, *the present invention is not limited to any particular platform*, unless specifically stated otherwise in the present disclosure."

(A82[15:27-42] (emphases added).)

Further, courts have in this context generally rejected the additional recitation of machine-related elements unless they impose meaningful limits on the claim's scope or otherwise extend beyond mere "insignificant postsolution activity." *In re Bilski*, 545 F.3d at 957. Claim 1 of the '505 patent similarly recites "an intelligent user interface," "icons on a web page," a "web browser," and "a

35

dynamically generated online application form set." Each of these "specified computer components are no more than objects on which the claimed methods operate," and therefore without more cannot impart patent eligibility on the claim. *Bancorp Services*, 687 F.3d at 1273.

Even assuming the computer-based limitations in Claim 1 could ever possibly satisfy the "machine" prong of the machine-or-transformation, the "abstract and sweeping" nature of the claim would effectively preempt all uses of a machine <u>of any kind</u> to provide the desired result. "'Under an appropriate § 101 scope analysis, the relevant concern is not whether there is a physical machine per se in the specification or claim language. Rather, the question should be whether the claim is so abstract and sweeping as to preclude all uses of the inventive idea, or whether it is sufficiently applied.'" *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 685 F.3d 1341, 1351, n.1 (Fed. Cir. 2012), *reh'g en banc granted, opinion vacated*, 484 F. App'x 559 (Fed. Cir. 2012) (quoting Mark A. Lemley et. al., *Life After Bilski*, 63 Stan. L. Rev. 1315, 1345 (2011)).

Claims 9 through 16 include generic computer system hardware and software components that do not warrant any special treatment and the same analysis as applied to claim 1, applies to them. Accordingly, the claims of the '505 patent are insufficiently limited by a computer (or any other machine) to satisfy the "machine" prong of the MOT test.

## 2.  **The '505 Patent Claims Do Not Perform a "Transformation"**

To satisfy the "transformation" prong of the MOT test, a claimed process must "[transform] a particular article into a different state or thing."  *In re Bilski*, 545 F.3d at 954.  Any transformation "must be central to the purpose of the claimed process."  *Id.* at 962.  The claims of the '505 patent are directed entirely to the gathering and manipulation of data, and such data does not represent any physical or tangible articles.  It is well-settled that the "mere manipulation or reorganization of data … does not satisfy the transformation prong."  *CyberSource Corp. v. Retail Innovations, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011); *see also Bancorp Services*, 687 F.3d at 1273 (affirming district court's finding that "the claims do not effect a transformation, as they do not transform the raw data into anything other than more data and are not representations of any physically existing objects") (internal quotation omitted).

Accordingly, the claims of the '505 patent also fail to satisfy the "transformation" prong of the machine-or-transformation test.

## III.  **THE '505 PATENT CLAIMS IMPERMISSIBLY PREEMPT INNOVATION WITH RESPECT TO THE ABSTRACT IDEA**

Continuing the § 101 analysis, each claim in the '505 patent further poses "risk of preempting an abstract idea."  *Accenture*, 728 F.3d at 1341 (citing *CLS Bank Int'l*, 717 F.3d 1282.  Every claim in the '505 patent is directed to patent-ineligible subject matter because they effectively preempt all manners of arriving

37

at the intended result, untethered to any specified application effective to provide that result.

Overly broad claims that tend to "foreclose[] more future invention than the underlying discovery could reasonably justify" are not directed to patent eligible subject matter under § 101. *Mayo,* 132 S. Ct. at 1301. However, "the underlying functional concern here is a *relative* one: how much future innovation is foreclosed relative to the contribution of the inventor." *Id.* at 1303. "A patentee does not uphold his end of this 'bargain' if he seeks broad monopoly rights over a basic concept, fundamental principle, or natural law without a concomitant contribution to the existing body of scientific and technological knowledge." *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1324 (Fed. Cir. 2012).

## A. Section 101 Analysis Looks to the Claims Language and any Disclosures in the Specification are Irrelevant

Whether or not the specification provides particular embodiments for obtaining the intended result is irrelevant when the claims are overly broad, as "the complexity of the implementing software or the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method." *Accenture*, 728 F.3d at 1345. As noted above, it is well-settled law that neither IPC nor any other entity is entitled to preemption of an abstract idea in the form of a result or motive that would foreclose future innovation with respect to that abstract idea.

38

IPC impermissibly seeks to distinguish the excessively broad claim language from the acknowledged prior art by pointing to embodiments recited in the specification. For example, in arguing that the claimed invention is not directed to an entirely conventional process for generating an online application form, IPC cites to the following portion of the specification:

> *In contrast to the prior art, the present system, in all its embodiments, maintains virtual application information, relative dependencies, and information context obtained and/or derived from each pane accessed by the user/applicant. This state maintenance enables use of standard browser Back and Forward button functions without loss of data and without losing the user's "place" in the application process.* A user can therefore "back up" one or more sub-panes or panes (i.e., switch to a logically "earlier" tab) and correct or change a data entry without having to re-enter any data from that earlier point forward to the point at which the user jumped back.

(A79[9:60-10:3] (emphasis added).) However, even assuming, *arguendo*, that the highlighted disclosure may integrate the intended result into the claim as a whole <u>if it were recited in the claim itself</u>, such an argument is clearly unavailing based on the overwhelming breadth of the actual claims. Further, there is no claim term or claim language that could possibly be interpreted to tie this disclosure into the claim.

While IPC correctly notes that the specification "must be considered for proper construction of the claims," this principle is flatly misinterpreted in this context. (Appellant's Br at 40.) It is well-settled that "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims,

particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988). Where the plain meaning of a term such as "maintaining said state," as readily ascertainable from the face of the patent, broadly encompasses virtually any solution (whether conventional, inventive or after-arising) that would subsequently allow the use of Back and Forward functionalities without loss of state, it is wholly improper for IPC to save their claim by arguing for specific limitations to be read into the claims instead. As the Supreme Court has noted, "[w]hile the cases more often have dealt with efforts to resort to specifications to expand claims, it is clear that the latter fail equally to perform their function as a measure of the grant when they overclaim the invention. When they do so to the point of invalidity and are free from ambiguity which might justify resort to the specifications, we agree with the District Court that they are not to be saved because the latter are less inclusive." *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 336 U.S. 271, 277, 69 S. Ct. 535, 539, 80 U.S.P.Q. 451 (1949).

## B. The General's Design Around Based on Disabling Browser Back and Forward Navigation Entirely Further Confirms Preemption

IPC continues to allege on appeal that The General's core arguments regarding preemption are belied by a website redesign that avoids the claims of the '505 patent while still "relating to filling out online forms without losing data when

using a browser's back and forward navigation functions." (Appellant's Br. 48.) Even a cursory review of the website in question (www.thegeneral.com) clearly indicates, however, that the claimed result (*i.e.*, use of a browser's Back and Forward navigation functions in an online form without losing data) is not allowed at all, but in fact <u>explicitly prevented</u> by the design around. The Back and Forward browser button functionality is entirely disabled.[10] Thus, The General's design around was achieved only by abandoning the result claimed in the '505 patent.

The efficacy of the design around with respect to the claimed result as described by IPC, while of direct relevance to a question of infringement, does not support patentability. Rather, the necessity for The General's design around itself reinforces the Appellees' core argument—that the claims of the '505 patent are so abstract and sweeping in nature as to preempt all manner of allowing the use of back and forward navigation functionalities in a multi-page online form without loss of state. The claims of the '505 patent seek to preempt the entire result identified in the wherein clause and are therefore ineligible for patentability.

---

[10] This feature was demonstrated directly to IPC, as further noted previously in briefing to the District Court, leaving little to no ambiguity as to the objective and the end result.

## IV.    <u>The District Court Properly Dismissed Each of the Defendants.</u>

Having properly dismissed the lawsuit against The General, the District Court properly dismissed each of the related cases.  IPC presents no arguments or legal precedent to the contrary.

# CONCLUSION

For the foregoing reasons, Defendant-Appellee The General respectfully requests that the Court affirm the District Court's ruling that the claims of the '505 patent are directed to patent-ineligible subject matter, and further affirm the dismissal of each of the cases in suit.

Respectfully submitted,

Dated: April 10, 2014

/s/ John F. Triggs
John F. Triggs
Waddey & Patterson, P.C.

*Counsel for Defendant-Appellee*
*The General Automobile*
*Insurance Services, Inc., Permanent*
*General Assurance Corporation, and*
*Permanent General Assurance*
*Corporation of Ohio*

Dated: April 10, 2014

/s/ Thomas F. Fitzpatrick
Thomas F. Fitzpatrick
Andy H. Chan
Pepper Hamilton LLP

*Counsel for Defendant-Appellee*
*QuinStreet, Inc.*

Dated:  April 10, 2014        /s/ Edward Anderson

Edward Anderson
Deepali Brahmbhatt
Sheppard Mullin Richter


Stephen S. Korniczky
Sheppard Mullin Richter
& Hampton LLP

*Counsel for Defendant Appellee
Tree.com Inc.*

# **CERTIFICATE OF COMPLIANCE**

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

- This brief contains 9,938 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

- This brief was prepared in a proportionally spaced typeface using Microsoft Word Standard 2010 in Size 14 Times New Roman font.

/s/ John F. Triggs
John F. Triggs
WADDEY & PATTERSON, P.C.
1600 Division Street, Suite 500
Nashville, TN 37203
(615) 242-2400
*Attorney for Defendant/Counterclaim
Plaintiff - Appellant*

Dated: April 17, 2014

## CERTIFICATE OF SERVICE

      I certify that a copy of the foregoing Appellee's Brief (corrected pursuant to Order by the Clerk of Court, Dkt. # 23) was served on all counsel of record on April 17, 2014 by electronic means via CM/ECF of the Court of Appeals for the Federal Circuit, including:

Joseph Greco, Attorney
Direct: 408-938-7900
Email: jgreco@beckllp.com
Fax: 408-938-0790
Beck, Ross, Bismonte & Finley LLP
150 Almaden Blvd.
San Jose, CA 95113

Brian Lawrence King, Attorney
Direct: 512-370-2800
Email: bking@winstead.com
Fax: 512-370-2850
Winstead Sechrest & Minick P.C.
401 Congress Avenue, Suite 2100
Austin, TX 78701

Justin Beck, Attorney
Direct: 408-938-7900
Email: jbeck@beckllp.com
Fax: 408-938-0790
Beck, Ross, Bismonte & Finley LLP
150 Almaden Blvd.
10th Floor
San Jose, CA 95113

Kimberly Zapata, Attorney
Direct: 408-938-7900
Email: kzapata@beckllp.com
Fax: 408-938-0790
Beck, Ross, Bismonte & Finley LLP
150 Almaden Blvd.
10th Floor
San Jose, CA 95113

Respectfully submitted on April 17, 2014,

      /s/ John F. Triggs
      John F. Triggs
      WADDEY & PATTERSON, P.C.
      1600 Division Street, Suite 500
      Nashville, TN 37203
      (615) 242-2400
      *Attorney for Defendant - Appellee*