## 2014-1048, -1061, -1062, -1063

# United States Court of Appeals
# for the Federal Circuit

INTERNET PATENTS CORPORATION, f/k/a Insweb Corporation,

*Plaintiff – Appellant,*

*v.*

ACTIVE NETWORK, INC.,
THE GENERAL AUTOMOBILE INSURANCE SERVICES, INC.,
d/b/a The General, Permanent General Assurance Corporation,
PERMANENT GENERAL ASSURANCE CORPORATION OF OHIO,
QUINSTREET, INC., and TREE.COM, INC.,

*Defendants – Appellees.*

*Appeals from the United States District Court for the Northern District of California in Nos. 3:12-cv-05035-JSW, 3:12-cv-05036-JSW, 3:12-cv-06505-JSW, and 3:12-cv-06506-JSW, Judge Jeffrey S. White.*

## REPLY BRIEF FOR PLAINTIFF-APPELLANT
## INTERNET PATENTS CORPORATION, f/ka/ INSWEB CORPORATION

JOSEPH A. GRECO
JUSTIN T. BECK
KIMBERLY P. ZAPATA
BECK, BISMONTE & FINLEY, LLP.
150 Almaden Blvd., 10th Floor
San Jose, CA 95113
(408) 938-7900

*Attorneys for Internet Patents
Corporation, f/k/a Insweb Corporation*

May 12, 2014



# TABLE OF CONTENTS

*Page*

I. SUMMARY OF ARGUMENT ..........................................................................1

II. ARGUMENT ..................................................................................................4

  A. The District Court's Granting of a Rule 12(b)(6) Motion Was
     Reversible Error Because a Proper Construction of the '505 Patent
     Claims Defeats Appellees' Invalidity Arguments ...........................................4

    1. Reversal Is Required if There Is Even a "Plausible" Reading of the
       Claims that Renders Them Not Invalid .......................................................4

    2. By Ignoring the Claim Language, the District Court Effectively
       Adopted The General's Overbroad Claim Construction that Was
       "Substantively Unrelated" to the Invention Described in the
       Specification ...............................................................................................6

    3. IPC Objected to The General's Overbroad Claim Construction and
       Urged the District Court to Properly Construe Claim Elements
       Including "Maintaining State" Before Deciding § 101 Defenses ..............6

    4. Appellees' Invalidity Arguments Are Predicated on the Overbroad
       Claim Construction that They Admit Is "Substantively Unrelated"
       to the Invention Described in the Specification .........................................9

    5. The Claims Cover Patent-Eligible Subject Matter When Construed
       Properly and that Construction Is Unequivocally "Plausible"..…………11

  B. The Claims Cover Patent-Eligible Subject Matter Even if They Are
     Construed as Appellees Contend ................................................................16

    1. The Claims Are Not Directed to Laws of Nature or Algorithms or
       Mathematical Equations or Any Other "Abstract Idea"...........................16

i

2. The Addition of a "Wherein Clause" Does Not Convert a Claim with Meaningful, Concrete Limitations into a Claim on an "Abstract Idea" ........................................................................................18

3. Appellees' Arguments Misapply *Mayo* and other Supreme Court Cases. ....................................................................................................20

4. The Claims Are Directed to Methods and Systems that Improve the Functioning of a Machine – a Computer Running a Web Browser that Is Being Used to Fill Out On-Line Forms ........................................26

   a. IPC Does Not Contend, and Never Has Contended, that the Claims Are Patentable Simply Because the Claimed Methods and Systems Are Implemented on a Computer ..................................26

   b. The '505 Claims Satisfy the "Machine-or-Transformation" Test ......27

5. At Most, Appellees' Arguments Based on Their Overbroad Claim Construction Raise Issues of Fact That Cannot Be Decided on a Rule 12(b)(6) Motion ..............................................................................28

C. All Four Judgments Must Be Reversed Because They Are All Based on the Same Erroneous Ruling ....................................................................29

III. CONCLUSION ....................................................................................................30

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Abbott Labs. v. Sandoz, Inc.,*
566 F.3d 1282 (Fed. Cir. 2009) ...........................................................15

*Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada (U.S.),*
687 F.3d 1266 (Fed. Cir. 2012) .................................................... 4, 5, 7

*Bilski v. Kappos,*
561 U.S. 593 (2010).................................................................. 18, 25, 27

*CLS Bank Int'l v. Alice Corp.,*
717 F.3d 1269 (Fed. Cir. 2012 (*en banc*), *cert. granted*, *Alice Corp.v. CLS Bank Intl.*, 134 S.Ct. 734 (2013) ........................................................... 25, 27

*Cultor Corp. v. A.E. Staley Mfg. Co.,*
224 F.3d 1328 (Fed. Cir. 2000) ...........................................................13

*DealerTrack Inc. v. Huber,*
674 F.3d 1315 (Fed. Cir. 2012) ...........................................................13

*Diamond v. Diehr,*
450 U.S. 175 (1981)................................................................ 21, 22, 26

*Gottschalk v. Benson,*
409 U.S. 63 (1972)......................................................................... 23, 24

*Hoffer v. Microsoft Corp.,*
405 F.3d 1326 (Fed. Cir. 2005) .................................................... 19, 20

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
566 U.S. ___, 132 S. Ct. 1289 (2012)........................................... passim

*Minton v. Nat'l Ass'n of Securities Dealers, Inc.,*
336 F.3d 1373 (Fed. Cir. 2003) ...........................................................19

*Northern Telecom, Inc. v. Datapoint Corp.*,
  908 F.2d 931 (Fed. Cir. 1990) .............................................................................16

*O'Reilly v. Morse*,
  56 U.S. 62 (1853) ....................................................................................... 22, 23

*Parker v. Flook*,
  437 U.S. 584 (1978) ............................................................................................24

*Phillips v. AWH Corp.*,
  415 F.3d 1303, 1316 (Fed. Cir. 2005) ........................................................ passim

*SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*,
  242 F.3d 1337 (Fed. Cir. 2001) ..........................................................................12

*Ultramercial, Inc. v. Hulu*,
  722 F.3d 1335 (Fed. Cir. 2013) ................................................................... passim

## Rules

N.D. Cal. Patent L.R. 4-1– 4-6 .................................................................................8

iv

## I.    SUMMARY OF ARGUMENT

Plaintiff-Appellant Internet Patents Corporation, f/k/a Insweb Corporation ("IPC") submits this brief in reply to the two opposition briefs filed by Defendants-Appellees.  References to the brief filed by Appellee Active Network, Inc. (Dkt. No. 21) are to "Act.Br."  References to the joint brief filed by Appellees The General Automobile Insurance Services, Inc. ("The General"), QuinStreet, Inc. ("QuinStreet"), and Tree.com, Inc. ("Tree.com") (Dkt. No. 22) are to "Gen.Br."

The district court's invalidation of IPC's U.S. Patent No. 7,707,505 B1 ("the '505 patent") cannot stand.  The *only* invalidity defense Appellees argued to the district court was patent-ineligible subject matter under 35 U.S.C. § 101.  The district court decided that issue against IPC without any evidence in an abbreviated Rule 12(b)(6) procedure.  The district court did not even allow oral argument on the Rule 12(b)(6) motion.  Instead, the district court summarily invalidated the patent, while ignoring this Court's *Ultramercial* decision by failing to focus at all on the claim language.  Thus the district court failed to heed *Ultramercial*'s admonition that Rule 12(b)(6) motions seeking to invalidate a patent under § 101 rarely should be granted, and *only* if there is *no* "plausible" construction of the claims that would render them patent-eligible.

1

Here there is at least a plausible construction of the claims that undercuts the district court's and Appellees' invalidity conclusions under § 101. Indeed, Appellees' claim construction, which is predicated on the erroneous premise that the '505 claims must be construed as being "substantively unrelated" to the invention described in the specification, is itself *implausible*. Therefore, *Ultramercial* compels reversal of the district court's dismissal based on The General's Rule 12(b)(6) motion, and thus of all four judgments that are based on that ruling.

Appellees' attempts to defend the district court's ruling with their legally improper claim construction fail. And Appellees offer *no* argument to support the district court's ruling if the claims – in particular, the "maintaining state" element in all the claims – are construed as IPC contends.

IPC's claim construction is correct, and certainly is "plausible," because the specification describes the invention, and all embodiments of the invention, to have the specific type of "maintaining state" that IPC contends. Furthermore, the specification disclaims the overly broad meaning of "maintaining state" on which Appellees base their patent-ineligibility arguments. These are sufficient grounds to reverse the judgments.

2

Even under Appellees' incorrect, overbroad claim construction, the '505 patent still claims patent-eligible subject matter. There is nothing "abstract" about the limitations of the claims, especially those preceding the "wherein" clause. A claim with concrete, palpable and tangible limitations cannot be rendered patent-ineligible simply by the addition of a "wherein" clause that merely states the result of performing the prior limitations. The '505 patent claims are not based on "laws of nature" or "algorithms" or "mathematical formulas" or "abstract ideas." Nor does IPC contend that the mere implementation of the claimed method steps on a computer imparts patent-eligibility. Appellees simply misunderstand or misapply the relevant Supreme Court and Federal Circuit case law. At the very least, Appellees' arguments are based on factual assumptions that cannot be decided in connection with a Rule 12(b)(6) motion.

All four judgments should be reversed for these additional reasons.

## II.    ARGUMENT

## A.    The District Court's Granting of a Rule 12(b)(6) Motion Was Reversible Error Because a Proper Construction of the '505 Patent Claims Defeats Appellees' Invalidity Arguments

### 1.    Reversal Is Required if There Is Even a "Plausible" Reading of the Claims that Renders Them Not Invalid

Appellees ignore the portion of *Ultramercial, Inc. v. Hulu,* 722 F.3d 1335 (Fed. Cir. 2013), that established when a Rule 12(b)(6) motion seeking dismissal for ineligible patent subject matter must be denied.  This Court explained that:

> [I]t will be rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter. This is so because every issued patent is presumed to have been issued properly, absent clear and convincing evidence to the contrary.

*Ultramercial*, 722 F.3d at 1338.  Most important, this Court held that a Rule 12(b)(6) motion should be denied unless "the *only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility."  *Id.* at 1339 (emphasis in original); *see* IPC's Opening Brief, Dkt. No. 16 ("Blue Br.") at 33. As IPC demonstrated in its opening brief, the district court did not even mention *Ultramercial* when ruling that "the Patent" was directed to nothing more than an "abstract idea."  Blue Br. at 12-15.

Appellees contend that *Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266 (Fed. Cir. 2012), stands for the proposition that

4

"'claim construction is not an inviolable prerequisite to a validity determination under § 101 ….'" Act. Br. at 26.  That is true as a general proposition, but it is not true as to a Rule 12(b)(6) motion if, as *Ultramercial* holds, there is a plausible claim construction that would show the claims to be patent-eligible subject matter, and thus not invalid under § 101.  In that situation, which is the situation here, the motion must be denied.

*Bancorp* is not to the contrary.  There this Court stated:

> We note, however, that it will ordinarily be desirable--*and often necessary*--to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter.

*Bancorp*, 687 F.3d at 1273-74 (emphasis added).  Indeed, while the district court in *Bancorp* failed to construe the claims, the Federal Circuit construed them (*id.* at 1274-75), but concluded that even under a construction favorable to the patent owner (Bancorp), the claims were not patent-eligible subject matter.  *Id.* at 1276-81.  Because there is a plausible reading of the claims here which even Appellees do not contend is patent-ineligible, the judgment must be reversed.  *See* Blue Br. at 16-17 and 38-42; Section II.A.4 and 5, *infra.*

5

**2. By Ignoring the Claim Language, the District Court Effectively Adopted The General's Overbroad Claim Construction that Was "Substantively Unrelated" to the Invention Described in the Specification**

The district court did not analyze the claim language in any respect. As IPC showed, the district court paraphrased in broad terms what it characterized as "the Patent" by referring to "Patent at Abstract" and copying word for word the following statement from The General's motion:

> The '505 Patent claims the exclusive right to allow the use of conventional web browser Back and Forward navigational functionalities without data loss in an online application consisting of dynamically generated web pages.

Blue Br. at 21-22 (citing A5, lines 4-6 and A1048, lines 23-25).

By simplifying and generalizing "the Patent," the district court effectively accepted The General's argument that "the '505 patent is a 'bait and switch'" because "the title and bulk of the detailed description are substantively unrelated to the claimed invention itself." A1049, lines 1-2.

**3. IPC Objected to The General's Overbroad Claim Construction and Urged the District Court to Properly Construe Claim Elements Including "Maintaining State" Before Deciding § 101 Defenses**

Appellees contend that IPC did not object to The General's overbroad claim construction, but merely argued that a ruling on the Rule 12(b)(6) motion was "premature" until claim construction was done. Act.Br. at 5; Gen.Br. at 3-4.

6

Appellees are wrong.  IPC specifically argued that The General was construing the

claims improperly, without appropriate reference to the invention described in the

specification.  Noting the *Bancorp* case, IPC argued that "[i]n the present case,

there are several claim terms that need to be construed before the claimed subject

matter can be fully understood."  A1092, lines 10-11.  IPC went on to object that:

> It was therefore improper (and premature) for The General to attempt
> to assign its own meaning to the claim terms.  The impropriety of The
> General's attempts to unilaterally construe the claims is particularly
> apparent in the incorrect and conclusory statements made by The
> General, such as *"the title and bulk of the detailed description are
> substantively unrelated to the claimed invention itself."* Motion at 4.
> Such a statement is contrary to Federal Circuit case law, which
> requires the claims to be interpreted in light of the entire specification,
> including the figures.  *See Phillips v. AWH Corp.*, 415 F.3d 1303,
> 1316 (Fed. Cir. 2005).

A1092, lines 16-25 (emphasis added).  In that brief opposing the Rule 12(b)(6)

motion, IPC pointed to claim elements including "furnishing a plurality of icons on

a web page displayed to a user of a web browser" and "maintaining said state upon

activation of another of said icons" as providing patent-eligible subject matter.

A1101, lines 2-5.  As The General argued, the broad construction of these elements

it relied on made them indistinguishable from the prior art distinguished in the

specification's description of the invention; *i.e.*, the General contended that the

'505 patent was a "bait and switch" because it argued that the claims were

"substantively unrelated to the claimed invention itself."  A1049, lines 1-2.

While IPC did not offer explicit claim constructions in its opposition to the Rule 12(b)(6) motion, it was not required to do so. First, and most important, it was The General's burden to show that "the *only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility." *Ultramercial,* 722 F.3d at 1339 (emphasis in original). Second, the Northern District of California has specific claim construction procedures that require months of detailed exchanges of contentions, claims charts, and information before actual claim construction briefing and a Markman hearing take place. *See* N.D. Cal. Patent L.R. 4-1– 4-6 (http://www.cand.uscourts.gov/localrules/patent). The parties had not started even the preliminary exchanges when IPC filed its opposition brief and they were months away from claim construction briefing and argument. *Cf.* A-1084-1102 (IPC's opposition brief to The General's Rule 12(b)(6) motion, filed March 13, 2013) with A1082-83 (parties' joint proposed Case Management Schedule with claim construction briefing to start on November 4, 2013). Third, the district court cancelled oral argument so that IPC's trial counsel did not have the opportunity to answer whatever questions about claim construction and patent-eligibility the district court had. A1.

8

#### 4. Appellees' Invalidity Arguments Are Predicated on the Overbroad Claim Construction that They Admit Is "Substantively Unrelated" to the Invention Described in the Specification

IPC demonstrated in its opening brief why the claim element "maintaining said state upon the activation of another of said icons" – which is present in all the '505 patent's claims – is not the generalized maintaining state of the prior art, but is defined by the specification in a narrower and more specific way. Blue Br. at 38-45. For example, IPC quoted from the specification regarding the proper construction of "maintaining state":

> *"In contrast to the prior art*, the present system, *in all its embodiments*, maintains virtual application information, relative dependencies, and information context obtained and/or derived from each pane accessed by the user/applicant. *This state maintenance* enables use of standard browser Back and Forward button functions without loss of data and without losing the user's 'place' in the application process."

Blue Br. at 39-40 (quoting A79, col. 9:60-66 (emphasis added)). IPC then explicitly argued that:

> Any proper reading of the '505 patent claims for purposes of a § 101 analysis must take into account this explanation of the claimed invention. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315-17 (Fed. Cir. 2005) (*en banc*) (specification must be considered for proper construction of claims).

Blue Br. at 40.

9

Appellees appear to argue both that IPC (1) did not make any claim construction arguments in its opening brief (Act.Br. at 37-38; Gen.Br. at 13) and (2) even if IPC did so, limitations cannot be "read into" the claims from the specification for purposes of patent eligibility (Act.Br. at 37; Gen.Br. at 39-40). As to the first argument, Appellees are wrong, as shown by the above quotes and generally by at least pages 16-17 and 38-42 of the Blue Brief, where IPC showed how "maintaining state" should be construed.  IPC will rebut the second argument in Section II.A.5, below, by showing that  that the claim construction arguments it raised in its opening brief are proper under *Phillips* and other controlling authority, and are at least "plausible."

If the Court agrees that IPC's claim construction arguments are proper or at least plausible, then it should reverse the judgments.  Appellees have not contested that the claims are patent-eligible subject matter if the claims are construed to require the "maintaining state" that is described in the specification and that is identified as being present "in all embodiments" of the invention.  A79, col. 9:60-61.  Rather, Appellees argue that the description of "maintaining state" in the specification is "irrelevant … based on the overwhelming breadth of the actual claims" (Act.Br. at 37), and contend that "[a]ssuming, *arguendo*," that such detail "is disclosed in the specification, such limitations are not permissibly incorporated

10

into the claims" (Gen.Br. at 12). Appellees thus have not presented any argument as to how the judgment can be affirmed if IPC's claim construction – *e.g*., that "maintaining state" means "maintaining virtual application information, relative dependencies, and information context obtained and/or derived from each pane accessed by the user/applicant" – is at least plausible. Rather, Appellees have relied on the argument that:

> Although the "state" of an online form set inherently must be maintained in some fashion to use the Back and Forward buttons, Step 3 [of claim 1] *broadly includes any means by which state may be maintained* while entirely failing to disclose how to maintain it.

Act.Br. at 32-33 (emphasis added); *see also* Gen.Br. at 38-39. Therefore, because Appellees' arguments are predicated on an improper claim construction – or at least a claim construction that is not the only "plausible" one – the judgments should be reversed. *See* Section II.A.5, below.

### 5. The Claims Cover Patent-Eligible Subject Matter When Construed Properly and that Construction Is Unequivocally "Plausible"

Appellees are wrong in arguing that the specification is "irrelevant" to a proper claim construction due to the claim language's "overwhelming breadth." Act.Br. at 37; *see also* Gen.Br. at 12 (descriptions in specification "are not permissibly incorporated into the claims"). In *Phillips*, the Court ruled *en banc* that that the ordinary meaning of a claim term cannot be divorced from the

11

specification's description of an invention and that often the claim's meaning turns

on "whether a person of skill in the art would understand the embodiments to

define the outer limits of the claim term or merely to be exemplary in nature."

*Phillips,* 415 F.3d at 1323. Here, the '505 specification, as quoted in the Blue

Brief and above, makes clear that it intends "maintaining state" to have a specific

meaning:

> *In contrast to the prior art*, the present system, *in all its embodiments*,
> maintains virtual application information, relative dependencies, and
> information context obtained and/or derived from each pane accessed
> by the user/applicant. *This state maintenance* enables use of standard
> browser Back and Forward button functions without loss of data and
> without losing the user's "place" in the application process.

A79, col. 9:60-66 (emphasis added); *see* Blue Br. at 39-40. This passage

characterizes the claimed "maintaining state" as different from any such

"maintaining state" in the prior art.

 While the "maintaining state" claim language theoretically could be read

more broadly in isolation, it must be interpreted as the specification has

characterized it. The case law on this is clear. In *SciMed Life Systems, Inc. v.*

*Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337 (Fed. Cir. 2001), this Court

held that when the specification "makes clear that the invention does not include a

particular feature, that feature is deemed to be outside the reach of the claims of the

patent even though the language of the claims, read without reference to the

specification, might be considered broad enough to encompass the feature in
question." *Id.* at 1341. The Court thus limited the claim for a lumen used in a
balloon dilation catheter to a coaxial lumen because the specification explicitly
referred to the other style lumen, a dual, side by side lumen, as inferior and used a
coaxial lumen in all embodiments described in the specification. *Id.* at 1343.
Likewise, in *Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328 (Fed. Cir. 2000),
this Court held that:

> Whether a claim must, in any particular case, be limited to the specific
> embodiment presented in the specification, depends in each case on
> the specificity of the description of the invention. … Claims are not
> correctly construed to cover what was expressly disclaimed.

*Id.* at 1331.

Appellees' reliance on *DealerTrack Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir.
2012), to argue that "limitations" from the specification cannot be "read into" the
claims is misplaced. *See, e.g.,* Act.Br. at 34-35. In *DealerTrack*, the district court
construed claims so that they were not limited to certain algorithms disclosed in the
specification, *but the patent owner did not appeal that claim construction ruling.*
*DealerTrack,* 674 F.3d at 1334. Therefore, the Court held that the algorithms
could not be considered on appeal when the claims were analyzed for patent-
eligibility under § 101. In contrast, IPC argued that the district court should have
construed the claims to include the specification's description of what

13

"maintaining state" means in the claims, and IPC made that claim construction

challenge part of its appeal. *See* Section II.A.4, *supra* (citing Blue Br. at 38-45).

Here, IPC's claim construction arguments are correct because the '505

inventors clearly distinguished their claimed invention from the "maintaining

state" in prior art systems that consisted of limited caching of information:

> Prior art on-line forms have cached limited information either on the
> client or host server machines so that a form spanning several pages
> may be completed. *Such caching has been limited to discrete, user-
> supplied information rather than including virtual application status
> and data dependencies as is provided by the present invention.*

A79, col. 9:49-59 (emphasis added). The claims thus cannot be construed to cover

such a broad scope of "maintaining state" which does not require maintaining

virtual application status and data dependencies across all panes.[1] *See also* A79,

col. 9:45-49 ("The most important aspect … of the present invention is … that it

maintains data state across all panes.").

Indeed, the above-quoted passages, and others quoted in the Blue Brief at

pages 5-10, provide what this Court has characterized as "practically

---

[1] A "pane" is a portion of the web page showing on the screen which a user views
when entering data. It also could be described as a "window." Some panes may
have other panes within them. An example of a pane is 320 in Figure 3 of the '505
patent (A57). Examples of panes within panes are 520, 571 and 574 in Figure 5
(A60).

14

incontrovertible directions about claim meaning." *Abbott Labs. v. Sandoz, Inc.,*

566 F.3d 1282, 1288 (Fed. Cir. 2009).  In Abbott, this Court stated that:

> [S]ometimes *the specification offers practically incontrovertible
> directions about claim meaning.* For example, inventors may act as
> their own lexicographers and give a specialized definition of claim
> terms. Likewise, *inventors and applicants may intentionally disclaim,
> or disavow, subject matter that would otherwise fall within the scope
> of the claim.*

*Id.* (emphasis added)(citations omitted).

The '505 patent thus makes clear that the claimed "maintaining state" is not

in the prior art and is an important basis for distinguishing the claimed invention

from the prior art.  As shown above, Appellees do not offer any argument as to

whether the '505 claims would be patent-ineligible under § 101 if they were

construed such that "maintaining state" means "maintain[ing] virtual application

information, relative dependencies, and information context obtained and/or

derived from each pane accessed by the user/applicant."  *See* A79, col. 9:60-66.

Because this claim construction is, at the very least, "plausible," the judgments

must be reversed.  *Ultramercial*, 722 F.3d at 1339.  Even under Appellees'

methodology for assessing patent-eligibility (*see* Section II.B, *infra*), the inventive

"maintaining state" methods described in the specification cannot be considered

"conventional" or "inherent" or "routine," at least absent a factual record that does

not exist here.

15

In addition, any last-ditch effort to salvage the district court's legally erroneous ruling by attempting to characterize the inventive "maintaining state" methods as not constituting a "sufficient disclosure" or a "specific example of a solution" to the problem of data loss when filling out on-line forms (*see* A5) must fail. That would be nothing more than a purported nonenablement argument under § 112 that would require inquiry into the understanding and capability of a person of routine skill in the art. *See* Blue Br. at 43 (citing *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 941 (Fed. Cir. 1990)("When the challenged subject matter is a computer program that implements a claimed device or method, enablement is determined from the viewpoint of a skilled programmer using the knowledge and skill with which such a person is charged.")). Accordingly, the Court should reverse the judgments for the reasons stated above. If the Court were not to agree that IPC's claim construction arguments are at least plausible, the Court still should reverse the judgments for the reasons stated below.

**B.    The Claims Cover Patent-Eligible Subject Matter Even if They Are Construed as Appellees Contend**

**1.    The Claims Are Not Directed to Laws of Nature or Algorithms or Mathematical Equations or Any Other "Abstract Idea"**

Even if Appellees were correct in arguing that the claims should be construed as being "substantively unrelated" to the invention described in the

16

specification, and thus given their broadest possible meaning, the claims still would be patent-eligible subject matter. For purposes of illustration, consider the elements of claim 1 other than the final "wherein" clause, which will be discussed in Section II.B.2, below:

> 1.    A method of providing an intelligent user interface to an on-line application comprising the steps of:
>
> furnishing a plurality of icons on a web page displayed to a user of a web browser, wherein each of said icons is a hyperlink to a dynamically generated on-line application form set, and wherein said web browser comprises Back and Forward navigation functionalities;
>
> displaying said dynamically generated on-line application form set in response to the activation of said hyperlink, wherein said dynamically generated on-line application form set comprises a state determined by at least one user input; and
>
> maintaining said state upon the activation of another of said icons ....

A82, col. 15:52-65. All the above language is directed to material objects and specific examples. This Court has held that "[a]n abstract idea is one that has no reference to material objects or specific examples--*i.e.*, it is not concrete." *Ultramercial*, 722 F.3d at 1343. Nothing in the above-quoted claim language purports to cover a "law of nature" or an "algorithm" or a "mathematical equation" or an "abstract idea." Rather, *all* of these limitations are concrete, palpable and tangible.

17

In *Ultramercial*, this Court unequivocally held that "[a] court cannot go hunting for abstractions by ignoring the concrete, palpable, tangible limitations of the invention the patentee actually claims." *Ultramercial*, 722 F.3d at 1344. Yet that is precisely what the district court did and what Appellees rely on in seeking affirmance of the judgment. In so doing, the district court and Appellees lose sight of the fact that both the Supreme Court and this Court have characterized the § 101 inquiry as but a "threshold check" or "threshold test." As *Ultramercial* holds, "patentability of a claim ultimately depends on 'the conditions and requirements of this title,' such as novelty, non-obviousness, and adequate disclosure." *Ultramercial*, 722 F.3d at 1341 (citing 35 U.S.C. § 101 and *Bilski,* 130 S. Ct. at 3225 (Characterizing § 101 as a "threshold test")). None of those inquiries as to the '505 patent's validity is relevant to this appeal.

### 2. The Addition of a "Wherein Clause" Does Not Convert a Claim with Meaningful, Concrete Limitations into a Claim on an "Abstract Idea"

The district court's and Appellees' analysis *starts* with the "wherein" clause, characterizes it as an "abstract idea," and then proceeds to disqualify all the foregoing concrete limitations by alleging that they are "conventional" steps or structures that are in the prior art. Act.Br. at 26-33; Gen.Br. at 17-24. First, Appellees' allegations as to what is or is not "conventional" or "in the prior art" are

18

based on nothing but attorney argument, and at best raise issues of fact that cannot be decided on a Rule 12(b)(6) motion. *See* Section II.B.5, *infra*. Moreover, Appellees' analysis makes no sense. Appellees argue that the "wherein" clause is an "abstract idea" because it states "a mere result." Act.Br. at 27; Gen.Br. at 18. Appellees go on to argue that:

> It … is well-settled that a "wherein" or "whereby" clause "generally states the result of the patented process." *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1329 (Fed. Cir. 2005). As recognized by the district court, each claim of the '505 patent clearly presents just such an example in the commonly recited "wherein" clause which purports to "allow the use of a conventional web browser Back and Forward navigational functionalities without data loss in an online application consisting of dynamically generated web pages." (A5-Order at 5)

Act.Br. at 28; *see also* Gen.Br. at 18. But, if the "wherein" clause merely states a "result, " as Appellees contend, then it makes no sense to use that clause to characterize the '505 claims as an "abstract idea" when the rest of the claims' language consists of concrete, palpable, and tangible limitations.

In *Hoffer*, this Court held that a "'whereby clause in a method claim is not given weight when it simply expresses the intended result of a process step positively recited.'" *Hoffer*, 405 F.3d at 1329 (quoting *Minton v. Nat'l Ass'n of*

*Securities Dealers, Inc.,* 336 F.3d 1373, 1381 (Fed. Cir. 2003)).[2] If, as Appellees

contend, the "wherein" clause is not to be given any weight when determining

patentability (*see also* Manual of Patent Examining Procedures, § 2111.04), how

can it be used as a basis for finding that the claim is directed to an "abstract idea"?

As shown above, the '505 patent's other claim limitations simply are not

"abstract ideas."  Under Appellees' methodology, the claims apparently would be

patent-eligible subject matter if they *lacked* the "wherein" clause – which

Appellees necessarily agree is given no weight for patentability because it is a

"mere result"– but would become patent-ineligible subject matter when the

"wherein" clause is *added* to the other non-abstract limitations.  This makes no

sense and it shows why the district court's and Appellees' analysis is wrong,

regardless of claim construction.

### 3.   Appellees' Arguments Misapply *Mayo* and other Supreme Court Cases

Both the district court and Appellees rely heavily on *Mayo Collaborative*

*Servs. v. Prometheus Labs., Inc.,* 566 U.S. ___, 132 S. Ct. 1289 (2012).  But the

patent in *Mayo* claimed a law of nature.  There is no law of nature in the '505

---

[2] In *Hoffer*, this Court affirmed the district court's claim construction ruling that certain capability stated in the "whereby" clause claimed "more than the intended result of a process step; it is part of the process itself."  *Hoffer*, 405 F.3d at 1330. Therefore, the "whereby" clause narrowed the claim accordingly.  *Id.*

patent claims. In *Mayo*, the claim recited that the law of nature was to be used to determine whether the patient who had been administered a drug should have his or her dosage increased or decreased. 132 S. Ct. at 1295. The claim would have made no sense without use of the law of nature because it would have consisted only of the steps of administering the drug and determining how much of the drug was in the patient's blood. Without use of the law of nature there would be no "result," *i.e.*, determination of whether to increase or decrease dosage. In stark contrast, the steps of '505 claim 1 *accomplish the result* stated in the wherein clause, *i.e.,* "allow[ing] use of said Back and Forward navigation functionalities without loss of state." Thus, for purposes of patentability, there is no need to even consider the wherein clause; it would surely make no sense to hold that its addition renders an otherwise patent-eligible claim patent-ineligible.

While *Mayo* stated that "in evaluating the significance" of steps in addition to a claimed law of nature, "the §101 patent-eligibility inquiry and, say, the §102 novelty inquiry might sometimes overlap" (132 S. Ct. at 1304), it did not in any way hold that a claim that merely stated the result of concrete, tangible limitations could be picked apart and all limitations that might be found in the prior art "disqualified" for purposes of the §101 patent-eligibility inquiry. Any such reading of *Mayo* would be in direct contradiction of *Diamond v. Diehr*, 450 U.S.

21

175 (1981), which *Mayo* did not overrule and in which the Supreme Court held

that:

> In determining the eligibility of respondents' claimed process for
> patent protection under § 101, their claims must be considered *as a
> whole*. It is inappropriate to dissect the claims into old and new
> elements and then to ignore the presence of the old elements in the
> analysis.

*Diehr*, 450 U.S. at 188.  Yet this is precisely what Appellees have done in

convincing the district court that the '505 patent claims are nothing but an "abstract

idea" and in asking this Court to uphold the judgments.

Appellees also rely heavily on *O'Reilly v. Morse*, 56 U.S. 62 (1853), which

also is inapposite.  In *Morse*, the Supreme Court *upheld* the validity of a number of

Samuel Morse's claims on telegraph inventions that had concrete, tangible

limitations.  The Supreme Court found only Morse's claim 8 invalid, because it

claimed *only* a result, regardless of how the result was achieved.[3]  Claim 8 stated:

> "Eighth.  I do not propose to limit myself to the specific machinery or
> parts of machinery described in the foregoing specification and
> claims; the essence of my invention being the use of the motive power
> of the electric or galvanic current, which I call electro-magnetism,
> however developed for marking or printing intelligible characters,
> signs, or letters, at any distances, being a new application of that
> power of which I claim to be the first inventor or discoverer."

---

[3] And, indeed, the claimed result – that one could use "the motive power of the
electric or galvanic current . . . for making or printing intelligible characters,
letters, or signs, at any distances" – was itself a "law of nature."  *See Morse,* 56
U.S. at 112.

22

*Morse*, 56 U.S. at 112.  In finding claim 8 unpatentable, the Supreme Court

reasoned that:

> It is impossible to misunderstand the extent of this claim.  He claims the exclusive right to every improvement where the motive power is the electric or galvanic current, and the result is the marking or printing intelligible characters, signs, or letters at a distance.
>
> If this claim can be maintained, it matters not by what process or machinery the result is accomplished.

*Id.* at 112-13.  Thus, *Morse* is inapposite precisely because the '505 patent does *not*

merely claim the result stated in the "wherein" clause of "allow[ing] use of said

Back and Forward navigation functionalities without loss of state" or, as the

district court characterized it, "retaining information lost in the navigation of

online forms."  A5, lines 17-19.  Rather, the claims contain concrete and tangible

limitations that must be performed to infringe the claim.  Again, Appellees may

attempt to prove on remand that, despite those limitations, the claims are invalid

under §§ 102, 103 or 112.  Nevertheless, the claims are not invalid under § 101.

Other Supreme Court cases on which Appellees rely also are inapposite

because they involved claims that were centered on algorithms or mathematical

formulas, and the '505 patent claims contain nothing of the sort.

*Gottschalk v. Benson*, 409 U.S. 63 (1972), involved claims to an algorithm

for converting binary-coded decimal numerals into pure binary code.  Act.Br. at

23

19.   The *Mayo* court described *Benson* as holding that "simply implementing a

mathematical principle on a physical machine, namely a computer, was not a

patentable application of that principle."   *Mayo*, 132 S. Ct. at 1301.   While the

claims in *Benson* were dependent on the use of the mathematical principle – which

is akin to a "law of nature" or "abstract idea" – the '505 claims achieve a result by

concrete and tangible limitations that have nothing to do with implementing

mathematical principles on a computer.

   *Parker v. Flook*, 437 U.S. 584 (1978), involved claims to a mathematical

algorithm for monitoring conditions during the catalytic conversion process in the

oil industry.   Act.Br at 20.   The *Mayo* court described the claims in *Flook*:

> The claimed process amounted to an improved system for updating
> those alarm limits through the steps of: (1) measuring the current level
> of the variable, *e.g.*, the temperature; (2) using an apparently novel
> mathematical algorithm to calculate the current alarm limits; and (3)
> adjusting the system to reflect the new alarm limit values.

*Mayo*, 132 S. Ct. at 1299 (citing *Flook*, 437 U.S. at 585-87).   Thus, the claims were

not patent-eligible because they were "doing nothing other than 'provid[ing] a[n]

unpatentable formula for computing an updated alarm limit.'"   *Mayo*,  132 S. Ct. at

1299 (citing *Flook*, 437 U.S. at 586).   Again, the "unpatentable formula" was what

the claims relied on to achieve a result; there is no such "unpatentable formula" in

24

the '505 claim limitations that precede the "wherein" clause; they cannot be disregarded for purposes of § 101.

*Bilski v. Kappos*, 561 U.S. 593 (2010), involved claims on a process for risk hedging. Act.Br. at 21. "One claim described the process; another reduced the process to a mathematical formula." *Mayo*, 132 S. Ct. at 1300 (citing *Bilski*, 130 S. Ct. 3218). The Supreme Court found the claims patent-ineligible because "the described 'concept of hedging' was 'an unpatentable abstract idea.'" *Mayo*, 132 S. Ct. at 1300 (citing *Bilski*, 130 S. Ct. at 3225). The '505 patent claims are not directed towards "business methods" such as "hedging" or the setting up of escrow accounts as in *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269 (Fed. Cir. 2012)(*en banc*), *cert. granted*, *Alice Corp.v. CLS Bank Intl.*, 134 S. Ct. 734 (2013)**.**

Cases such as *Bilski and CLS Bank* present a different question than is at issue here: whether "business methods" or "formulas" are patent-eligible when tied to computer hardware and software. While Appellees continue to assert that IPC relies on mere "computer implementation" for patent-eligibility, Appellees are flatly wrong. The '505 patent claims cover an improvement to a machine: a computer running a web browser being used to fill out on-line forms. *See* Blue Br. at 32; Section II.B.4, *infra*.

*Diehr* involved claims that included using a mathematical formula to perform steps of a method for curing synthetic rubber by way of a computer. Act.Br. at 21. The Supreme Court found the claims to be patent-eligible "because of the way the additional steps of the process integrated the equation into the process as a whole." *Mayo*, 132 S. Ct. at 1292 (citing *Diehr*, 450 U.S. at 187). Appellees contend that the '505 claims are not like those in *Diehr*. That is true in part. There is no algorithm or mathematical formula in the '505 claims as in the *Diehr* claims. But what made the *Diehr* claims patentable were the same type of "concrete, palpable, tangible limitations of the invention the patentee actually claims" that are present in the '505 claims. *Ultramercial*, 722 F.3d at 1344 (citing *Mayo,* 132 S. Ct. at 1297).

**4. The Claims Are Directed to Methods and Systems that Improve the Functioning of a Machine – a Computer Running a Web Browser that Is Being Used to Fill Out On-Line Forms**

**a. IPC Does Not Contend, and Never Has Contended, that the Claims Are Patentable Simply Because the Claimed Methods and Systems Are Implemented on a Computer**

Appellees continue to argue that IPC bases its patent-eligibility arguments on an allegation that the claimed methods and systems are "implemented" on a computer. Act.Br. at 39-40; Gen.Br. at 28-29. That is not IPC's argument and never has been IPC's argument. IPC explained in its opening brief that the district

26

court simply misunderstood IPC's argument in holding that "Plaintiff contends that

its claims are patent-eligible under the machine-or-transformation test based on the

position that each claim and the desired result require computer implementation."

Blue Br. at 30-31 (quoting A6, lines 3-5).  As IPC further explained, "the '505

patent claims are directed to improved structures and functions for the creation and

use of on-line forms, not merely to implementing a patent-ineligible abstract idea

on standard computer hardware and software."  Blue Br. at 32.  That is why cases

such as *Bilski* (implementing risk hedging formulas on a computer) and *CLS Bank*

(implementing escrow accounts on a computer) are not comparable to this case.

Indeed, the claims here are more clearly patent-eligible than those found not

invalid under § 101 in *Ultramercial* (claiming method for distributing copyrighted

products – *e.g.*, songs, movies, books – over the Internet).

> **b.      The '505 Claims Satisfy the "Machine-or-Transformation" Test**

Contrary to Appellees' assertions, the '505 patent claims an improvement to

a machine; *i.e.*, to a computer running a web browser being used to fill out on-line

forms.  The improved machine is a computer configured so that the state of

dynamic web pages (called "form sets") is based on at least one user input and is

preserved when a user clicks on a new icon representing a different web page.  The

improved machine can more efficiently be used to create and fill out on-line forms. *See, e.g.,* Blue Br. at 15-16.

The parties all appear to agree that the "machine-or-transformation" test is not dispositive, but can be helpful in assessing patent-eligibility. Act.Br. at 43; Gen.Br. at 32-33. The '505 patent claims satisfy that test, even if the claims are construed in the overly broad manner on which Appellees base their arguments. Of course, if the claim are construed properly (*see* Section II.A.5, *supra*), the specifics of how the state of the web pages is maintained make the details of the improvement even clearer. Appellees have recognized this, of course, by not contesting patent-eligibility if the claims are so construed. Act.Br. at 37; Gen.Br. at 12.

### 5. At Most, Appellees' Arguments Based on Their Overbroad Claim Construction Raise Issues of Fact That Cannot Be Decided on a Rule 12(b)(6) Motion

Appellees make numerous allegations about what elements of the claims are "inherent," what elements are "conventional," and how broadly the claim "preempts" the field. Because this was a Rule 12(b)(6) motion, in which evidence outside the complaint could not be submitted, all these allegations are based on nothing more than attorney argument. There is no testimony in the record, let

alone expert testimony, showing how one of ordinary skill in the art would assess these factual questions.

In *Ultramercial*, this Court held that "the analysis under § 101, while ultimately a legal determination, is rife with underlying factual issues." 722 F.3d at 1339. IPC demonstrated in its opening brief why that certainly is true here, even using Appellees' overbroad claim construction. Blue Br. at 45-48. Even if Appellees' analysis were not legally erroneous, it is based on allegations of fact about the prior art and what one of ordinary skill would understand which are unsupported by evidence and which cannot be resolved on a Rule 12(b)(6) motion. The judgments should be reversed on that basis alone.

## C. All Four Judgments Must Be Reversed Because They Are All Based on the Same Erroneous Ruling

The district court's ruling on The General's Rule 12(b)(6) motion (A1-8) was the sole basis for the judgments in all four actions. *See* A9-10 (the judgment in The General case); Blue Br. at 50 (citing A11-22, which are the orders and judgments in Active Network, QuinStreet and Tree.com cases). Because the Rule 12(b)(6) ruling was legally erroneous and because the judgment in The General case must therefore be reversed, the three other judgments (Active Network, QuinStreet, and Tree.com cases) must be reversed. For purposes of clarity, IPC does not assert other grounds for reversing these latter three judgments. All four judgments must fall, or stand, together.

29

## III.   CONCLUSION

IPC was wrongly deprived of its patent rights by an abbreviated Rule 12(b)(6) motion procedure in which no claims were construed, no evidence could be submitted, and no oral argument was allowed.

For the reasons stated in IPC's opening brief and in this reply brief, the Court should reverse the judgments in all four cases on the grounds that the claims of the '505 patent are directed to patent-eligible subject matter under 35 U.S.C. § 101, and remand the cases to the district court.  In the alternative, the Court should reverse all four judgments on the grounds that there are at least genuine issues of fact as to whether the claims of the '505 patent are directed to patent-eligible subject matter, and remand the cases to the district court.

Dated: May 12, 2014

Respectfully submitted,

By: /s/ Joseph A. Greco
    Joseph A. Greco
    jgreco@beckllp.com
    Justin Beck
    jbeck@beckllp.com
    Kimberly P. Zapata
    kzapata@beckllp.com
    BECK, BISMONTE & FINLEY
    150 Almaden Blvd, 10th Floor
    San Jose, CA 95113
    (408) 938-7900

    *Attorneys for Internet Patents Corporation,*
    *f/k/a Insweb Corporation*

30

# United States Court of Appeals
## for the Federal Circuit

*Internet Patents Corporation v Active Network, Inc.,*
2014-1048, -1061, -1062, -1063

### CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by BECK, BISMONTE & FINLEY, LLP, Attorneys for Appellant to print this document. I am an employee of Counsel Press.

On **May 12, 2014** counsel for Appellant has authorized me to electronically file the foregoing **Reply Brief for Plaintiff-Appellant** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

JOHN FRANCIS TRIGGS
*(Principal Counsel)*
WADDEY & PATTERSON, P.C.
1600 Division Street, Suite 500
Roundabout Plaza
Nashville, TN 37203
615-242-2400
jft@iplawgroup.com
*Counsel for Appellees Permanent*
*General Assurance Corporation of*
*Ohio and The General Automobile*
*Insurance Services, Inc., dba The*
*General, Permanent General*
*Assurance Corporation*

MATTHEW D. MURPHEY
*(Principal Counsel)*
MEGHAN CANTY SHERRILL
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614
Direct: (949) 622-2700
Fax: (949) 622-2739
matt.murphy@troutmansanders.com
meghan.sherrill@troutmansanders.com
*Counsel for Appellee*
*Active Network, Inc.*

THOMAS F. FITZPATRICK
*(Principal Counsel)*
ANDY H. CHAN
PEPPER HAMILTON LLP
555 Twin Dolphin Drive, Suite 310
Redwood City, CA 94065
Direct: (650) 620-9516
Fax: (650) 620-9594
chana@pepperlaw.com
fitzpatt@pepperlaw.com
*Counsel for Appellee*
*Quinstreet, Inc.*

EDWARD V. ANDERSON
*(Principal Counsel)*
DEEPALI BRAHMBHATT
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
379 Lytton Avenue
Palo Alto, CA 94301
Direct: (650) 815-2600
Fax: (650) 815-2601
evanderson@sheppardmullin.com
dbrahmbhatt@sheppardmullin.com

STEPHEN S. KORNICZKY
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
12275 El Camino Real, Suite 200
San Diego, CA 92130
Direct: (858) 720-8900
Fax: (858) 509-3961
skorniczky@sheppardmullin.com
*Counsel for Appellee Tree.com, Inc.*

Paper copies will also be mailed to the principal counsel noted above counsel at the

time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will

be filed with the Court, via Federal Express, within the time provided in the

Court's rules.

May 12, 2014                              /s/ Robyn Cocho
                                         Robyn Cocho
                                         Counsel Press

## **CERTIFICATE OF COMPLIANCE**

Counsel for Plaintiff-Appellant Internet Patents Corporation, f/k/a Insweb Corporation, hereby certifies that the foregoing brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. Based on the word count tool for the software used to prepare the foregoing brief, the number of words in the brief, excluding the sections excludable under Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure and Federal Circuit Rule 32(b), is 6,796.

Dated: May 12, 2014                    Respectfully submitted,

                                       By: /s/ Joseph A. Greco
                                           Joseph A. Greco
                                           jgreco@beckllp.com
                                           Justin Beck
                                           jbeck@beckllp.com
                                           Kimberly P. Zapata
                                           kzapata@beckllp.com
                                           BECK, BISMONTE & FINLEY
                                           150 Almaden Blvd, 10th Floor
                                           San Jose, CA 95113
                                           (408) 938-7900

                                           *Attorneys for Internet Patents Corporation,*
                                           *f/k/a Insweb Corporation*